LEMONS ET AL. *v.* BARTON ET AL.

[No. 19,376. Filed December 5, 1962. Rehearing denied January 9, 1963.]

*A. Bonner Brown,* of Marion, and *Albert W. Ewbank,* of Indianapolis, for appellants.

*George J. Milford, Milford & Milford,* of Marion, *Donald E. Bowen, C. Patrick Clancy* and *Bowen, Kivett, Northam & Clancy,* of counsel, of Indianapolis, for appellees.

RYAN, J.—The appellees, as plaintiffs below, filed their complaint against the appellants, as defendants below, to recover their commission alleged to be due on a written contract for the sale or exchange of real estate which was owned by the appellants. The appellants filed their answer under Supreme Court Rule 1-3. Trial was had by the court, and judgment was rendered in favor of the appellees in the sum of Two Thousand ($2,000.00) Dollars. Appellants filed their motion for a new trial, specifying that the court erred in the assessment of the amount of recovery in that it was too large; that the decision of the court was not sustained by sufficient evidence; that the decision of the court was contrary to law; and that the appellants had since the trial discovered evidence material to their defense. The motion for a new trial was overruled, and the overruling of this motion is now assigned as error.

The written agreement which was entered into by the parties is as follows:

"BARTON & BARTON

"Office Phone NOrth 2-6592 Marion, Indiana Res. Phone 2866J

"CONTRACT for Sale of REAL ESTATE

Date – June 28th, 1954

"I or we, hereby authorize BARTON & BARTON of 304 Glass Block, MARION, INDIANA to sell or exchange my property, business, or farm, and to advertise or post signs for same, described as follows: On Deed attached.

Will cut payment to $62.50

Price $40,000.00 Mtg. $5,000.00 Due $70.00 payment.

Terms on Balance ——— This agreement for the exclusive sale of said property to run 3 months from date thereof and thereafter until ——— days notice is given in writing of withdrawal from market, and if said BARTON & BARTON, sells, or is instrumental in selling said property or lands during said time I or we will pay a commission thereon at the rate of 5 percent.

"BARTON & BARTON Walter Barton

"SALESMAN   T. J. Pence

OWNER   Goldie E. Lemons

OWNER   John W. Lemons"

We should note first that apparently the case was tried below on the theory that the evidence introduced was within the issues tendered by the pleadings. On appeal we thus treat the matter on the theory on which the case was tried. *Weaver* v. *Brown* (1912), 51 Ind. App. 379, 99 N. E. 825.

The appellants had originally contacted the appellees during the first part of 1953, when the appellants went to the appellees' office and told them they had

a tourist camp for sale. At that time the appellees stated they would see if they could find a buyer, and they discussed listing the property. The appellants stated that if the appellees brought a buyer they would sign a listing. Appellees showed the property "to some people" but did not at that time procure a buyer. About a year later Mr. Lemons stopped in appellees' office and stated that he still had a trailer court for sale or exchange. The appellees wanted to list the property, and Mr. Lemons stated that "if you bring me a buyer I will sign your listing", and Mr. Walter Barton told him at that time that they would have to have such a listing.

At this time the appellees were negotiating a sale or exchange of the Queen's Motel, located in Marion, Indiana, and owned by a Mr. and Mrs. Truss. Mr. Walter Barton wrote to the Lemonses and asked if they would be interested in trading their lake property for the motel. About a week or ten days later Mr. Lemons inspected the Queen's Motel and told the Bartons that it would be up to Mrs. Lemons. Mrs. Lemons then inspected the motel and left word at the appellees' office that if the Trusses were interested to bring them up to see the appellants' property. The appellees, accompanied by the Trusses, then went to the appellants' property to inspect it on June 29, 1954. The appellants and the Trusses agreed on an exchange of their respective properties, at which time the appellees drew up what is designated a "Contract for Exchange of Real Estate" which contained the following provision:

"I hereby ratify and confirm the employment of Barton & Barton, real estate broker, to find and procure a purchaser for my property above described and in consideration of services performed by said broker in negotiating and bringing about

the foregoing sale, hereby agree to pay said broker forthwith a commission of Five percent."

Arrangements were made to go to an attorney's office to sign a "Formal Contract" on July 15th. On July 15, 1954, the parties executed the necessary instruments for the sale and exchange of their respective properties.

That there was a conflict in the evidence is apparent from the following testimony of appellee, Walter Barton:

"Q. Did you explain to the Lemons that you were also representing the Trusses as their Broker?

A. I did.

Q. That you were making a commission of $5,000.00 from them?

A. That's right.

Q. And no objection was made except Mr. Lemons thought your commission rate was high?

A. That's right."

and appellant, Goldie E. Lemons:

"A. While the Trusses were inspecting the Camp and going all around, looking at the boat house and so on, Walter Barton asked if we had been informed of any change in the real estate rules and we said 'no' and he said there was a change and to make a sale now you would have to sign a listing and I said I didn't think that was necessary as he was working for the Trusses and Mr. Barton said 'I know we are working for the Trusses and you do not owe us any commission or money.'"

Appellants first contend that because of the dual representation by the appellees their (the appellees) duties were "so irreconcilable and conflicting that they cannot be performed by the same agent with-

out danger that he will sacrifice the interests of one to the other, or both when his commission is dependent upon the consummation of the sale. If he so acts as agent of each without the knowledge of both, he is clearly guilty of breach of contract and commits a fraud by his concealment."

The general rule in Indiana is as stated in 4 I. L. E. Brokers 30, as follows:

"A broker who represents each of several parties with conflicting interests may not generally recover compensation from any, unless his double employment was approved by all parties, and he may not, for example, recover a commission from his principal when acting in collusion with a third person and working to secure the principal's property for him at the lowest possible price.

"However, a broker who, with the knowledge of both parties, represents both of them may recover a commission from both. . . ."

However, the testimony as we have set out above points out the conflict between the parties to this controversy, and we can do no better than to repeat the language used in the case of *Cox* v. *Haun* (1890), 127 Ind. 325, 26 N. E. 822, at 127 Ind. page 326, where it was stated:

"The appellee, in his testimony, says that the owners 'knew that he was acting as agent for them both,' and he also testifies that the appellant agreed to pay him a commission of one and a half per cent. This evidence fully sustains the verdict. It is probable that without any direct testimony showing that the appellant knew that the broker was acting for the other party to the exchange the fact that he was so acting would be necessarily inferable from the fact that the appellant knew the business in which the appellee was engaged, and knew that he already had in his

hands, as broker, the property of the other party to the contract of exchange.

"If an owner goes to a broker and promises to pay him a commission for effecting an exchange with another owner who has already employed the broker, it is no more than reasonable to infer that he does so with knowledge that if the broker rendered service to both parties he will expect compensation from both of them.

"It is a mistake to suppose that an ordinary real estate broker occupies the same position as an agent employed to buy or sell specific property, for such a broker is generally a middleman, employed to bring the principals together, and give them an opportunity to effect an exchange of property. [citing cases] If the broker is guilty of fraud, or if he takes any advantage of his position to the injury of his principal, he can not recover commissions; but where, as here, he acts in good faith, brings the principals together in his own office, and they make their own bargain, uninfluenced by any representations of his, he is entitled to compensation."

Appellants' second contention is that there was testimony on the question of whether or not a listing was required and that in regard to such listing requirement the appellees did not correctly represent the facts. Again, for the sake of clarity, we set out the pertinent testimony verbatim:

"Q. Was any reference made to the fact that the law requires the listing of real estate brokers and requires also a listing contract to be executed?

A. Yes, I told them we had to have a listing on the property to sell it. He understood that."

. . .

"Q. It's a fact, isn't it Mr. Barton, that you told the Lemons that the law required you to have a listing on your properties?

A. I told them we couldn't sell their property at all that it required a listing since 1949 and that they had to pay a commission."

The 1949 act referred to is the Acts of 1949, ch. 44, Burns' §63-2401 *et seq.*, 1961 Replacement, which is the licensing law for real estate brokers and agents, which contains no specific requirement for written listings in the sale or exchange of real estate. However, our statute of frauds, Burns' §33-104, imposes such requirement in the following language:

> "Commission for sale of land.—No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one [1] person of a purchaser for the real estate of another, shall be valid unless the same shall be in writing, signed by the owner of such real estate or his legally appointed and duly qualified representative: Provided, That any general reference to such real estate sufficient to identify the same shall be deemed to be a sufficient description thereof."

And thus appellants submit the contention that:

> "... Barton was familiar with legal verbiage, and the preparation of contracts, and while the representation to appellants, Lemons, may not have been a fraudulent representation, Barton was surely aware of the fact that the 1949 law which is a licensing law for real estate broker and agents, did not make any specific reference or make any specific requirements that a broker must represent both sides in a real estate exchange or that the bringing of his client, as seller, and with whom he had previously negotiated a listing, required that the buyer, had also to deal through him, by means of listing an agreement to pay a commission."

Apparently the court concluded, and we think rightly so, that the appellee Walter Barton was without accurate memory as to which particular statutory act of the State of Indiana in fact required the written listing for the collection of a commission. Therefore, we are unimpressed with the

appellants' contention that such representation in this particular case constituted a misrepresentation of the law or that the same was an indication of bad faith sufficient to vitiate the written agreement between the parties. The only incorrect statement made by the appellee, as reflected by the record, was that such requirement was enacted in 1949. The particular year of the enactment of such statute is without any influence upon the correctness of appellee's statement concerning the requirement of such listing by the law. It follows that appellants' said contention is without substance.

The appellants further contend that the trier of the facts, to reach the conclusion that was reached, had to disregard all of the appellants' evidence. However, all of the evidence on the pertinent material issues was in conflict and it was the sole duty of the trier of the facts to weigh such evidence and determine the credibility of the witnesses who presented the conflicting testimony. Unless the appellants can demonstrate by the record that the evidence, in some essential particular favorable to them, was undisputed and that no conflicting reasonable inferences could be drawn therefrom, we would be unwarranted in declaring that the court disregarded such evidence. The appellants have made no such demonstration. Consequently, we may only look to see if there was evidence tending to support the decision reached, and in so doing we cannot substitute our own personal opinion as to the weight and the credibility of the evidence.

Relative to appellants' proposal that a new trial should be granted by reason of newly discovered evidence, it seems appropriate to set out the material substance of the affidavits which were filed in sup-

port thereof. The appellants filed three affidavits, the first being that of a DeVon and Fern Emmons, and which affidavit states:

"That we took Goldie Lemons to a garage to inform Mr. John W. Lemons that Lewis E. Truss and Esther R. Truss, Mr. Barton and Mr. Pence were there to sign an agreement. We saw Mr. and Mrs. John W. Lemons, Mr. and Mrs. Truss, Mr. Pence, Mr. Barton and Phillip Lemons go into the house and a short time later Mr. and Mrs. Truss came out, went down to the lake and then over to Osborn's boat house, leaving Mr. Barton, Mr. Pence, John, Goldie and Phillip Lemons in the house for a good while. We also know that Phillip Lemons had been on the lake but came in at this time."

and an affidavit of Dale O. Tripp, which states:

"Walter Barton and father came to the office of Tripp & Tripp Realty located at 221 N. Detroit St., Warsaw, Indiana, along with John W. and Goldie E. Lemons to have the undersigned acknowledge the signatures of Mr. and Mrs. Lemons in his capacity of Notary Public. He, Dale O. Tripp, has no recollection of the nature of the document which the Lemons signed and believes he did not have any knowledge of the same at the time of acknowledgement. After signing, Mr. Lemons asked me how much he owed me. Because of long acquaintance and friendly relations I refused to accept a Notary fee from him. Mr. Barton spoke up to say that this work was for him and that they (Walter Barton and father) should pay a fee. Neither the Bartons or Lemons paid a Notary fee."

and an affidavit of Robert McLain, which states:

"He called on Mr. and Mrs. Lemons at the Queens Motel on May 15th, 1958. The subject was brought up about Lemons buying the Motel. I remarked to Lemons that Bartons were at the Hoosier Bedding Company about two years ago and made the remark to him they were good sales-

men that they had just sold the Queens Motel."
Counter-affidavits were filed by the appellees.

The applicable statute on newly discovered evidence, Burns' §2-2401, 1946 Replacement, provides that a new trial may be granted for newly discovered evidence material to the party applying therefor which he could not with reasonable diligence have discovered and produced at the trial. The complaint in this particular case was filed on November 1, 1955, and trial was finally held in April of 1958. A careful reading of the affidavits and examination of the whole record leads us inescapably to the conclusion, first, that with reasonable diligence such matters could have been discovered before the trial of the cause; and, second, that the nature and character of the proposed evidence, as stated in the said affidavits, does not raise a reasonable presumption that a different result would be reached if such were introduced at a new trial. The granting of a new trial on such ground is within the sound discretion of the trial court and appellants have not here shown such an abuse of discretion by the court as to require us to reverse for this reason.

> "It is well settled that applications for a new trial on the ground of newly discovered evidence are looked upon with disfavor. Not only must diligence preceding the trial be shown but the evidence must be of such a character as to raise a reasonable presumption that a different result will be reached if it is introduced in the new trial. Granting such a motion is within the sound discretion of the trial court whose ruling will not be disturbed except for abuse of such discretion." *Bartley* v. *Chicago & E. I. Ry. Co.* (1942), 220 Ind. 354, 360, 41 N. E. 2d 805.

The last contention of the appellants is that the amount of the recovery is too large. However, under

such specification the appellants present no cogent argument to substantiate such contention but are content to generalize by reference back to the arguments which we have already disposed of in this opinion.

Finding no reversible error, the judgment must be affirmed.

Judgment affirmed.

Cooper, C. J., and Ax, J., concurring.

Myers, J., not participating.

NOTE.—Reported in 186 N. E. 2d 426.