PATRICK HOGAN *v.* STATE OF INDIANA

[No. 3-976A220. Filed September 28, 1977.]

*Paul B. Huebner*, of Hammond, *Terry C. Gray*, of Gary, for appellant.

*Theodore L. Sendak*, Attorney General, *Daniel L. Pflum*, Deputy Attorney General, for appellee.

GARRARD, J.— After trial by jury, Hogan was convicted of unlawful possession of a controlled substance (secobarbital). On appeal two errors are asserted.[1] The first asserts Hogan should be granted a new trial for newly discovered evidence. The second contention is that he was deprived of a fair trial because one of the jurors was a brother-in-law of a member of the prosecuting attorney's staff. We affirm.

The controlled substance was concealed in a jar of baby powder which Hogan was attempting to deliver to his brother Robert, who was an inmate of the Lake County jail. At trial Hogan denied knowing the drug was concealed in the jar. The motion asserting newly discovered evidence is based upon the affidavit of another brother, Edward, that it was Edward who had placed the drugs in the jar.

Indiana Rules of Procedure, Trial Rule 59(A)(6) permits a new trial for newly discovered material evidence which  could not, with reasonable diligence, have been discovered and produced at trial. Under the rule a new trial

---

1. Other assignments in the motion to correct errors have been expressly waived.

may be denied where there is no showing that the evidence could not have been produced at trial had reasonable diligence been exercised. In addition, the evidence must be such that had it been admitted it would "reasonably and probably" have produced a different verdict. *Keyton v. State* (1972), 257 Ind. 645, 278 N.E.2d 277. Concerning the second requirement, we have consistently held that new evidence which is merely cumulative does not necessitate a new trial. *Johnson v. State* (1974), 262 Ind. 516, 319 N.E.2d 126.

The reasonable inference to be drawn from the affidavit of Hogan's attorney which was filed in support of the motion for new trial is that he knew of Edward's potential testimony before trial. However, he did not subpoena Edward as a witness, nor does it appear that he even asked Edward to appear voluntarily and was refused. Indeed it appears that he subsequently discovered that Edward was willing to testify. To avoid the consequences of these failures Hogan asserts that had he, in fact, called Edward as a witness, Edward could have refused to testify on Fifth Amendment grounds. Under the circumstances this assertion fails to establish reasonable diligence.

More significantly, we cannot say admission of Edward's testimony would reasonably and probably have changed the result of the trial.

The issue is whether Hogan knowingly possessed the drugs. While he denied knowledge, his testimony of the events that transpired was not without conflict. At one point he testified that he gave the package to no one, he merely placed it on a counter. He later conceded he gave the package to Officer Deeman. When he was subsequently questioned about the drugs at the jail he asserted that Robert's girlfriend had had them. While this might be interpreted as displaying his ignorance of the contents, it might also imply guilty knowledge and an attempt to shift the blame to another.

Edward's affidavit admits he placed the drugs in the jar. That act, however, does not preclude Hogan's guilt if he was aware of

the contents. Edward's assertion that Hogan did not know the drugs were in the jar is, at best, evidence that Hogan did not initiate the plan. It has probative value in determining the ultimate inference, but it certainly does not negate subsequent discovery and knowing possession by Hogan. Thus, while the proffered evidence is relevant it is nevertheless merely cumulative. The court did not err in refusing to grant a new trial for newly discovered evidence.

It appears that during the progress of the trial, juror Theodoros discovered that his brother-in-law was serving as a deputy prosecuting attorney.[2] The next morning before the trial recommenced the juror reported this fact to the court. The court conducted a hearing, and counsel were permitted to inquire of the juror about the matter. At the conclusion of the hearing defense counsel indicated that he wished to confer with his client and that he would then wish to move for a mistrial. The court indicated it would deny a mistrial because an alternate juror had been sworn and was available, but that it would remove Mr. Theodoros in favor of the alternate if the defense desired. Defense counsel then conferred with Mr. Hogan. After the conference he advised the court that they desired to keep Mr. Theodoros as a juror and that he wished to "withdraw" his challenge to Mr. Theodoros and his motion for mistrial. The request was granted and the trial proceeded to conclusion.

Hogan first asserts prejudice from the fact that he was unaware of the juror's relationship during original voir dire. In ruling upon this contention we need not examine the questions posed to Mr. Theodoros before his acceptance on the panel. Admittedly, he was unaware at that time of his brother-in-law's status. We believe both the juror and the court were correct in their handling of the matter. After disclosure and conference, Hogan and his attorney elected to keep the juror. Hogan thereby waived the matters disclosed as grounds for disqualification.

Secondly, it is suggested that Hogan's election to proceed was

---

2. The juror knew his brother-in-law was an attorney but was unaware of his status as a member of the prosecutor's staff. Admittedly, the brother-in-law had no direct involvement in this case.

tainted by a private reservation about seating the alternate. The alternate juror was not challenged for cause when the jury was impaneled, nor is it asserted that Hogan had exhausted his peremptory challenges. He may not therefore complain now at the prospect of her service. *See, e.g., McFarland v. State* (1975), 263 Ind. 657, 336 N.E.2d 824.

Finally, it is urged that newly discovered evidence vitiates the consent given to proceed with juror Theodoros and establishes a ground for new trial. That evidence consists of the disclosure that Mr. Theodoros had a conversation with his brother-in-law, the deputy prosecutor. It is neither alleged nor implied that they discussed the matters on trial, nor is it disclosed how the conversation was initiated. It appears that the two talked and that the conversation consisted of the brother-in-law describing the nature of his job and urging Theodoros to promptly make disclosure to the court.

During the hearing conducted after the disclosure, Hogan had the opportunity to examine Theodoros regarding any such contacts or conversations. He did not do so. Furthermore, it appears that the conversation involved nothing apart from the matters actually considered at the hearing, *i.e.*, disclosure of the familial relationship. Accordingly, the court did not err in refusing to grant a new trial for this reason.

Affirmed.

Staton, P.J. and Hoffman, J. concur.

NOTE — Reported at 367 N.E.2d 1100.