**LIGON SPECIALIZED HAULER, INC.,**
**Defendant-Appellant,**

v.

**Don E. HOTT, Plaintiff-Appellee.**

**No. 2–377 A 91.**

Court of Appeals of Indiana,
Fourth District.

Jan. 18, 1979.

*Stores, Inc. v. Chitwood* (1973), 261 Ind. 86, 300 N.E.2d 335.

Phillip E. Stephenson, Marion, for defendant-appellant.

CHIPMAN, Presiding Judge.

A Two Hundred and Nineteen Dollar ($219) judgment was rendered in favor of plaintiff-appellee Donald Hott against defendant-appellant Ligon Specialized Hauler, Inc. (Ligon). Ligon's appeal presents essentially three questions for our review:

1. Was the decision of the trial court unsupported by, and contrary to, the evidence?

2. Was the trial court's decision contrary to law in that Hott was an improper party in interest?

3. Should Ligon be entitled to a new trial in light of newly discovered evidence?

We affirm.

■ Our disposition of these questions has been hampered in two respects. First, the judgment presently under attack was rendered in the small claims docket of the Huntington County Court which pursuant to Ind.Code 33–10.5–7–2 (Supp.1977)[1] resolves cases under significantly relaxed rules of procedure and evidence. This informality is evidenced in the case at bar by the total absence of pleadings and objections. Second, we have not been favored with an appellee brief which at first blush appears to impose upon this court the burden of controverting arguments advanced for reversal. However, in cases where the appellee fails to file a brief, Indiana courts have long applied a less stringent standard of review with respect to showings of reversible error. In light of these cases, appellant Ligon need only establish that the lower court committed prima facie error to win reversal.[2] *Fagan v. Royer*, (1963) 244 Ind. 377, 193 N.E.2d 64, 69; *Colley v. Carpenter*, (1977) Ind.App., 362 N.E.2d 163, 166. Furthermore, the statement of facts contained in Ligon's brief is deemed by us to be accurate and sufficient for the disposition of this appeal. *Colley* at 166. Since the case at bar concerns a complicated and somewhat ambiguous factual situation re-

1. Except as otherwise provided in this article [33–10.5–1–1—33–10.5–8–6] the practice and procedure in the county court shall be as provided by statute and Indiana rules of procedure as adopted by the Supreme Court of Indiana. However, in cases of the small claims docket there shall be the following exceptions:

(a) Defendants shall be deemed to have complied with the statute and rule requiring the filing of an answer upon entering their appearance personally or by attorney. The appearance shall be deemed a general denial and shall preserve all defenses and compulsory counterclaims which may then be presented at the trial of the cause.

(b) If, at the trial of the cause, the court determines that the complaint is so vague and ambiguous that the defendant was unable to determine the nature of plaintiffs' claim, or that the plaintiff is surprised by defense or compulsory counterclaim raised by the defendant that the plaintiff could not reasonably have anticipated, the court shall grant a continuance.

(c) The trial shall be informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law, and shall not be bound by the statutory provisions or rules of practice, procedure, pleadings or evidence except provisions relating to privileged communications and offers of compromise.

2. The above rules have been established for the protection of the court so that the court might be relieved of the burden of controverting the arguments advanced for a reversal where such burden rests upon the appellee. These rules are not for the benefit of the appellant. Their application is discretionary and dependent upon the appellant having made a prima facie showing of error in his brief. *Bennett v. Pearson*, (1966) 139 Ind.App. 224, 218 N.E.2d 168, 171.

garding the proper parties to a lease agreement, we deal at length with the facts as elicited in Ligon's brief.

Plaintiff-appellee Hott brought this action against defendant-appellant Ligon for breach of a "trip lease" agreement. Hott owned the Agrarian Transport Company which leased trucks to companies which hauled general freight. One such company to which Hott leased trucks was Hine Line. According to Hott's testimony, he leased his trucks and drivers to Hine Line for the one-way hauling of freight to a specific destination and then Hott's drivers would enter into trip lease agreements under which the trucks would be leased to other companies for the return journey.

 The questions presented in this appeal revolve in large part around a trip lease signed by the agents of Ligon and Hott to haul lumber from Arkansas to Tennessee. The record established that the lumber was in fact delivered and that Ligon was paid and, therefore, no question is presented regarding performance of the agreement by the owner-lessor of the truck.[3] The issue turns on who that owner-lessor is and, thus, to whom Ligon as lessee is liable under the trip lease agreement.

Trial commenced in the small claims docket of the Huntington County Court. Gary Wilmoski, Ligon's Assistant Claims Manager, and Hott were the only witnesses. During the course of trial, seven exhibits were introduced including the trip lease agreement in question. This agreement was signed by Don Fifer, Hott's driver, and an agent of Ligon. However, neither Hott's name nor his company's appears on this agreement; rather, it incorrectly denotes Fifer as the agent of Hine Line and Hine Line as the owner-lessor of the truck. Hott acknowledged that the truck had been leased to Hine Line, but testified that he was the owner-lessor and that Fifer was his employee.

### PROPER PARTIES

 Ligon presents a well reasoned, two-pronged attack in support of its contentions that the lower court's judgment is not supported by sufficient evidence and is contrary to the evidence. Emphasizing the omission of Hott's name on the trip lease agreement, Ligon submits an argument which is essentially founded on the lack of any contractual basis upon which Hott could base his claim. Ligon maintains, and we agree, that unless Hott has established his privity or third party beneficiary status, his action *on* the agreement must fail. Furthermore, any attempt to contradict the trip lease agreement and thereby establish the true owner-lessor of the truck would contravene the parol evidence rule.[4] Again, so far as it goes, we agree with Ligon's analysis. Nevertheless, we find sufficient evidence to support the lower court's award on a contractual ground overlooked by Ligon—reformation.

 The law in Indiana pertaining to the remedy of reformation is stated in *Citizens' National Bank of Attica v. Judy*, (1896) 146 Ind. 322, 340, 43 N.E. 259, at 264:

Equity will reform a written contract between the parties whenever, through mutual mistake, or mistake of one of the parties accompanied by the fraud of the other, it does not, as reduced to writing, correctly express the agreement of the parties. (citations omitted)

In order to reform the trip lease agreement and thereby "read out" Hine Line as owner-lessor, Hott must establish the elements enunciated in *Pearson v. Winfield*, (1974) 160 Ind.App. 613, 618–619, 313 N.E.2d 95, at 99:

A party seeking reformation on the ground of mutual mistake must establish

---

3. In its brief Ligon argues it suffered damage in acquiring confirmatory memoranda that the delivery in question was made and, therefore, it is entitled to a set-off. As this contention was not presented in Ligon's motion to correct errors, it is waived. Ind.Rules of Procedure, Trial Rule 59(G). Furthermore, we note that the $219 damage award was based on computations made by Ligon's own witness.

4. We note again that this issue was not raised in Ligon's motion to correct errors and, therefore, it is waived. T.R. 59(G).

by clear and satisfactory proof the true intentions common to all parties to the instrument, that a mistake was made, and that the mistake was mutual and consequently the instrument, as written, does not state the true intention or agreement of the parties.

The primary purpose of reformation is to effectuate the common intentions of all parties to an instrument which were incorrectly reduced to writing. It follows that *a grant of reformation is necessarily predicated upon a prior understanding between all parties on all essential terms.* Otherwise, there would be no standard to which an instrument could be reformed. Even under our relaxed standard of review, we believe Hott has met this burden.[5]

The uncontradicted evidence in this case clearly established grounds for reformation of the trip lease agreement so as to omit Hine Line as a contracting party and insert Hott in place thereof. The agreement itself established that Ligon intended to contract for the lease of a truck from the owner-lessor.[6] The agents of both Hott and Ligon apparently believed Hine Line to be that owner-lessor. Both believed Fifer was acting as the agent of Hine Line and not Hott. Both were mistaken.[7] Due to this mutual mistake of fact, we find appropriate reformation eminently proper.

This conclusion is buttressed by independent research which reveals that earlier decisions have also reformed contracts so as to include omitted parties. *See, e. g., Parish v.*

*Camplin,* (1894) 139 Ind. 1, 37 N.E. 607; *Collins v. Cornwell,* (1892) 131 Ind. 20, 30 N.E. 796; *Radebaugh v. Scanlan,* (1907) 41 Ind.App. 109, 82 N.E. 544; *Prescott v. Hixon,* (1899) 22 Ind.App. 139, 53 N.E. 391. Unlike these cases, however, Hott also sought to *omit* one listed as a party to the lease agreement. Although this twist raises an issue of first impression, we will not sanction the acceptance of free benefits by Ligon under this lease agreement. Except for the agreement itself, the record does not disclose that Hine Line had any interest in the lease agreement. Only due to the mistake of the actual contracting parties' agents was Hine Line listed as a party. If neither Hine Line nor Hott can receive payment, Ligon enjoys a windfall. We will not sanction such unjust enrichment.

## CAPACITY AND JOINDER

■ Ligon also assails the judgment below on the grounds that Hott was an improper party in interest under Ind.Rules of Procedure, Trial Rule 17 and that Ligon *may be subject to a second action on behalf* of Hine Line for its interest in the trip lease agreement. We disagree.

Our holding on the previous issue disposes of Ligon's contention that Hott was not a real party in interest. Furthermore, Ligon's own brief acknowledges that Hott had an interest in this case since one of his trucks was involved in the lease agreement. We believe this sufficiently meets at least two of the three tests[8] enunciated by Dean

---

5. Pursuant to *Cripe v. Coates,* (1954) 124 Ind. App. 246, 116 N.E.2d 642, a written contract may be reformed on parol evidence and then specifically enforced.

6. Furthermore, we find no evidence which would suggest that Ligon would not contract with Hott. Indeed, the two companies had engaged in prior lease agreements.

7. Hott attributed the mistaken inclusion of Hine Line as a party in the trip lease agreement to the error of Ligon's agent. Ligon, on the other hand, contends that the mistake was Fifer's fault since he had signed an earlier document as agent for Hine Line. Regardless, we find that the mistake charged was not due to Hott or Fifer's negligence. *See generally* 25 I.L.E. *Reformation of Instruments* § 14 (1960).

8. Dean Harvey states:

In general, Indiana courts have defined real party in interest to mean the owner of the claim sued on and have employed at least three broad tests in determining whether a party is "the real party in interest:"

(a) Has he a real interest in the subject matter of the controversy?

(b) Is he entitled to the fruits or benefits of the action?

(c) Will his recovery fully protect the defendant against a subsequent suit on the same demand and will he be cut off from any just counterclaim against the demand? (citations omitted)

2 W. Harvey, Indiana Practice § 17.3, at 212 (1970). We believe Hott has met the first two tests.

Harvey which have been utilized by our courts to determine who is a real party in interest.

Although a more vigorous analysis is presented regarding Ligon's second argument, it too must fail. Ligon's brief and contentions at trial evidence that its primary concern in this action was to avoid multiple suits and double liability under the trip lease agreement. As stated in their brief, "[T]he real problem involved herein [is] that LIGON will be subject to a second suit on behalf of Hine Line for their interest in that lease agreement." In this factual setting Ligon argues that a new trial must be granted because Hott failed to bring Hine Line into this action. According to Ligon, it was unable to exercise this "option" of making Hine Line a party in light of the mandates of T.R. 14.

■ We believe that Ligon has overlooked T.R. 19 and misconstrued on whose part the obligation to join "indispensible" parties rests. Assuming, without deciding, that Ligon's speculation of potential double liability is well founded, an adequate remedy may be found in T.R. 19(A).[9] Since Ligon could have made a motion before or during trial to join Hine Line as a party, the question arises whether Ligon's failure[10] to do so constitutes a waiver under T.R. 19(C).[11] Even under the relaxed procedures practiced in the small claims docket,

we hold it does. *See Warner v. Young American Volunteer Fire Dept.,* (1975) Ind. App., 326 N.E.2d 831, 838. We will not allow a party to sit idly by until appellate review before presenting appropriate motions for the joinder of additional parties. To hold otherwise would be to transform such trials into quagmires of competing irrelevancies since a defendant's silence regarding indispensible parties would guarantee a new trial following appellate reversal.

### NEWLY DISCOVERED EVIDENCE

Ligon's final assignment of error centers on the lower court's failure to grant a new trial pursuant to T.R. 59(A)(6) in light of newly discovered evidence. The alleged newly discovered evidence was an exclusive lease agreement between Hott and Hine Line which apparently involved the same truck as that in the trip lease agreement. Under the terms of the exclusive lease agreement, Hine Line was to receive twenty-five percent of all revenues acquired through the use of Hott's truck.

■ To prevail, Ligon must establish that this evidence satisfied the four elements enunciated in *Kelly v. Bunch,* (1972) 153 Ind.App. 407, 409, 287 N.E.2d 586, at 588–589:

---

**9.** Persons to be joined if feasible. A person who is subject to service of process shall be joined as a party in the action if:

(1) in his absence complete relief cannot be accorded among those already parties; or

(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:

(a) as a practical matter impair or impede his ability to protect that interest, or

(b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant.

**10.** In its brief Ligon states that the lower court was "specifically requested" to make Hine Line an additional party. In support of this contention, Ligon directs our attention to the following

ing "request" by its attorney during final argument:

> Your Honor, I will propose one further solution, as you know if the court's going to make the order, and so much is owing and you know we're tendered into the Clerk—we have to, you know—and then he can add them as an additional party. If they default, then it can be ordered over to them directly. My only interest, like I said, your Honor, is just trying to stay out of the middle and ending up paying you know, two hundred dollars or whatever it is both places. Or getting themselves in trouble with the ICC.

We note that this "solution" was proposed after the presentation of evidence and not until the judge had made it fairly clear that judgment would be rendered against Ligon. Furthermore, this request is, at best, ambiguous.

**11.** Pleading nonjoinder. Nonjoinder under this rule may be raised by motion as provided in Rule 12(B)(7).

A motion for a new trial based on newly discovered evidence should be received with great caution and the alleged evidence should be carefully scrutinized. The newly discovered evidence must be material, and must be more than just cumulative or impeaching. The party seeking a new trial because of newly discovered evidence must show that the evidence is such that it could not have been discovered before the trial by the exercise of due diligence, and must show that the evidence is such that it would reasonably and probably result in a different verdict. The granting of a new trial because of newly discovered evidence is a matter which rests within the sound discretion of the trial court, whose decision will be disturbed only for a manifest abuse thereof. (citations omitted)

*See also Grenchik v. State ex rel. Pavlo,* (1978) Ind.App., 373 N.E.2d 189, 193. It is our opinion that Ligon could with due diligence have discovered this evidence prior to trial.

■ One who seeks a new trial on the grounds of newly discovered evidence must set out facts establishing the use of due diligence. *See Hogan v. State,* (1977) Ind. App., 367 N.E.2d 1100, 1102; *Dawson v. State,* (1975) Ind.App., 324 N.E.2d 839, 845; *Trout v. Summit Lawn Cemetery Association, Inc.,* (1974) 160 Ind.App. 552, 312 N.E.2d 498, 500; *Lemons v. Barton,* (1962) 134 Ind.App. 214, 186 N.E.2d 426, 432; *Dwyer v. McClean,* (1961) 133 Ind.App. 454, 175 N.E.2d 50, 55. Furthermore, the mere statement that "reasonable diligence" has been used does not suffice. *Matis v. Yelasich,* (1956) 126 Ind.App. 287, 132 N.E.2d 728, 730.

■ Assuming, without deciding, that Ligon's bare assertion of "reasonable diligence" in its motion to correct errors satisfies the mandate of T.R. 59(G), we find no factual basis nor does Ligon present one for concluding that this evidence could not have been procured prior to trial. From its inception, this case has turned on whether Hine Line or Hott was the owner-lessor of the leased truck. We believe that in the exercise of due diligence Ligon should have requested production of any documents or agreements between Hine Line and Hott so as to determine their respective interests in this truck. Even if unaware of the existence and relevance of the exclusive lease agreement before trial, Ligon certainly knew or should have known during the course of trial and should therefore have made a timely motion for its production. *Johnson v. State,* (1974) 262 Ind. 516, 319 N.E.2d 126, 129. We hold accordingly that the lower court did not abuse its discretion in refusing to grant Ligon a new trial.

Finding no reversible error, we affirm.

MILLER and YOUNG, JJ., concur.