In re the MARRIAGE OF Cynthia D. DALL, Appellant–Respondent,

and

Steven J. Dall, Appellee–Petitioner.

No. 55A01–9606–CV–180.

Court of Appeals of Indiana.

May 30, 1997.

Thomas M. Barr, Nashville, for appellant.

Steven J. Dall, Indianapolis, pro se.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Cynthia D. Dall ("Wife") appeals from the property division portion of the decree which dissolved her marriage to Steven J. Dall ("Husband"). The sole issue presented for our review is whether the trial court abused its discretion when it included property that was titled in Wife's parents in the marital estate.

We reverse.

### FACTS

The parties were married in 1983. Two children were born of the marriage, but no issues related to the children are involved in this appeal. Husband filed his dissolution petition in 1994, and the trial court entered its Decree of Dissolution of Marriage and Judgment in 1995.

Throughout the marriage, the Dalls received substantial financial contributions from Wife's parents. Wife's father, C.M. Walker ("Father"), suggested that the parties purchase a home. Father wanted his grandchildren to have a permanent, stable home in the area where he lived so that he and the Wife's mother ("Mother") could visit them.

The Dalls decided to build a home, and Father purchased a lot for $17,250.00. Father helped in the construction of the home, as he had experience in home building. Husband invested some 2,400 hours of his own labor in constructing the home, and Wife also contributed some effort in the construction. Father paid all the contractors and subcontractors and for the building materials. In all, Father and Mother spent approximately $93,000.00 to construct the home. Additionally, Father provided about 90 percent of the

lumber used in the home from trees which were grown on his farm. Father and Mother loaned Husband and Wife approximately $5,300.00 to purchase appliances for the home, which Wife eventually repaid.

Father and Mother owned record title to the property. When the lot was first acquired, the parties agreed that title would be conveyed to Husband and Wife sometime in the future. However, Mother refused the couple's request to convey title during construction of the home, and the parties were unable to come to any agreement after that time. Husband and Wife were expected to pay the utilities, property taxes and homeowner's insurance. However, they failed to make all of the payments, and Father paid approximately $3,600.00 toward those bills.

A practice was established whereby Father would write Wife a check in the amount of $833.00 each month, and Wife would then issue Father a check in the same amount. This procedure was followed in order to establish a cash (cost) basis for the home should it ever be sold. During the couple's separation period, the court ordered Husband to make five monthly payments of $800.00 to Wife representing their "mortgage."

The trial court valued the home at $150,-000.00,[1] included the home in the marital estate, and awarded it to Wife. Citing *Sovern v. Sovern*, 535 N.E.2d 563 (Ind.Ct.App.1989), the court found that "the marital estate has an interest in the real estate." Record at 140. In its plan of distribution, the court awarded Wife property with a net value of $145,899.02. Husband was awarded property with a negative net value of $7,414.92. The trial court found that Wife should be award-

ed 85 percent of the net marital estate due to the substantial contributions made by her parents. To accomplish this distribution, the court ordered that Wife pay Husband a judgment of $29,298.27 and that the judgment be secured by a mortgage on the marital residence. Wife now brings this appeal.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision is clearly erroneous or constitutes an abuse of discretion. *In re Marriage of Stetler*, 657 N.E.2d 395, 398 (Ind.Ct.App.1995), *trans. denied.* Reversal is merited only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* We may not reweigh the evidence or assess the credibility of witnesses, and we consider only the evidence most favorable to the trial court's disposition of marital property. *Id.*

Indiana Code § 31–1–11.5–11(c)[2] creates a rebuttable presumption that an equal division of property is just and reasonable. *Hacker v. Hacker*, 659 N.E.2d 1104, 1109 (Ind.Ct.App.1995). A trial court may deviate from an equal division provided that it sets forth a rational basis for its decision. *Id.*; *see* IND. CODE § 31–1–11.5–11(c). In reviewing a property division, we presume that the trial court considered and properly applied the statutory guidelines. *Shumaker v. Shumaker*, 559 N.E.2d 315, 318 (Ind.Ct.App. 1990).

---

1. Both Husband and Wife included the property in their financial declarations and valued it at $150,000.00, although Wife listed their "net equity value" to be $3,631.49. Record at 228, 399.

2. Indiana Code § 31–1–11.5–11(c) provides in relevant part:

    (c) The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

    (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
    (2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.
    (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of any children.

## Inclusion of Residence in Marital Estate

■ Wife contends that the trial court erred when it included the residence in the marital estate. Husband counters that pursuant to *Sovern*, the dissolution court may properly determine that a divorcing couple owns an equitable interest in real property titled in a nonparty and include the value of that interest in the marital estate. *See Sovern*, 535 N.E.2d at 566. We conclude that our holding in *Sovern* should be confined to its unique and narrow facts and should not be followed.

In *Sovern*, the property in question consisted of the marital residence and an automobile body shop. The property was titled in the husband's parents who were not made parties to the dissolution proceeding. *Id.* at 565. The facts supporting the judgment reveal that while the parents held legal title to the property, the money used to construct the property was derived from the Soverns' marital resources. *Id.* The Soverns held themselves out as the owners of the property, the house was insured in both their names and their homeowner's policy reflected no insurable interest held by the parents. *Id.* Significantly, the parents claimed no interest in the property and were willing at all times during the Soverns' marriage to deed the property to them. *Id.*

Based on these facts, the trial court awarded the husband the residence and the body shop and awarded the wife a lump sum of $38,500.00 to compensate her for her interest in the property. *Id.* In affirming that award, this court stated that "[b]are legal title alone does not eliminate either the property or the investment thereon from being part of the marital estate to be considered by the Court in arriving at an equitable division." *Id.* Accordingly, we held that the trial court properly included the property in the marital estate.[3] *Id.* at 567.

In *Sovern*, the owners of the record title disclaimed any interest in the real estate. Here, Father testified that the parties had been unable to decide whether or when the property would be deeded to Husband and Wife. Record at 306–308. While Father originally intended to give the house to them, Mother had refused to agree to the transfer. Record at 310. Husband and Wife may have hoped eventually to acquire legal title to the property, but unlike the husband and wife in *Sovern*, they did not have a definite agreement that title would be transferred to them. In sum, neither Husband nor Wife possessed the definite interest necessary for the home to be included in the marital estate.

Our recent opinion in *Hacker v. Hacker*, 659 N.E.2d 1104 (Ind.Ct.App.1995), which was decided after the trial court issued its dissolution decree here, is controlling. In *Hacker*, we stated that "although a trial court in a dissolution proceeding may *not award or otherwise divide* property not owned by either of the parties, the court may consider a present possessory interest in distributing divisible assets." *Id.* at 1111 (emphasis added); *see also Moore v. Moore*, 482 N.E.2d 1176, 1179 (Ind.Ct.App.1985) (cars owned by wife's father were improperly included in marital estate, but her use of them could be considered in property distribution); *Olds v. Olds*, 531 N.E.2d 1219, 1220 (Ind.Ct. App.1988) (before property can be divided, a spouse must have a vested right in it).

In *Hacker*, the trial court initially included in the marital estate a family farm that the husband expected to inherit from his parents. *Hacker*, 659 N.E.2d at 1106. The couple had lived on the farm rent-free, although they had used their own marital resources to improve and repair the farm, for which they were not reimbursed. *Id.* In its findings, the trial court noted that the wife considered the couple to be equitable owners, and not renters, of the property, and further stated that the court "had the authority to include as a marital asset the parties' equitable interest in the farm ..." *Id.* at 1106–07. Accordingly, the court awarded the farm to the husband and awarded the wife a money judgment to compensate her for her interest in the property. *Id.* at 1106. After a motion to

---

3. The trial court also found that the parents held the property in "constructive trust" for the Soverns. *Sovern*, 535 N.E.2d at 565. On review, we held that the imposition of a constructive trust on nonparties was inappropriate. However, we further stated that the trial court's use of a constructive trust was "mere surplusage and therefore only harmless error." *Id.* at 567.

correct error, the trial court concluded that it had "mistakenly included in the property distribution property that was not part of the marital estate." *Id.* at 1107.

On appeal, we affirmed the trial court's decision to exclude the farm, stating unequivocally that an interest must be vested to warrant inclusion in the marital estate and division between the parties. *Id.* We explained:

> Case law has long established that an unvested interest in property is not divisible as a marital asset.... No one has vested rights in an ancestor's property until the latter's death.... Even some vested interests, such as remainders in which the spouses have no present possessory interest, are deemed too remote to be included in a property settlement.

*Id.* (citations omitted).[4] Thus, an equitable interest in real property titled in a third-party, although claimed by one or both of the divorcing parties, should not be included in the marital estate.[5] Instead, the interest can be considered in dividing the couple's actual marital assets in accordance with Indiana Code § 31-1-11.5-11(c). *Id.* at 1111.

In *Hacker*, we also concluded that the trial court could properly consider the value of the husband's continued residence on the farm but could not consider the value of his potential inheritance in determining a just and reasonable division of the marital property. *Id.* We stated:

> Both of John's parents were living at the time of the dissolution. Although John is an only child and could eventually inherit the farm either through a will or under the laws of intestate succession, this potential inheritance would evaporate if, in the intervening years, John's parents sell the

farm or devise the property to someone else. In addition, unforeseeable changes in the farm marketplace or in governmental policy regarding farm subsidies or the laws of inheritance or taxation could considerably change the farm's value.

\* \* \* \* \*

> Because property settlements are not ordinarily subject to modification, basing a division upon the possibility of a future inheritance might prove to be unfair in light of subsequent circumstances. While it is true that John could inherit the property next week, he could also wait decades only to discover that such eventuality will not occur.

*Id.* at 1112–1113 (footnotes omitted). In light of these contingencies, we held that the husband's expectancy in the property was too remote and speculative to be considered in the distribution of the property. *Id.*; *see also McNevin v. McNevin*, 447 N.E.2d 611 (Ind.Ct.App.1983) (value of unliquidated tort claim was too speculative to be considered in property division); *cf. In re Marriage of Osborne*, 174 Ind.App. 599, 369 N.E.2d 653 (1977) (right of inheritance should be included where husband's mother died intestate prior to couples' final separation, leaving husband with fixed right to ascertainable probate assets).

Applying *Hacker* to the present case, we hold that the trial court improperly included the Dalls' residence in the marital estate. Neither Husband nor Wife holds a vested interest in the marital residence, and their purported equitable interest in the property is indeterminate. Additionally, in dividing the marital property, the trial court should not consider the full market value of the home, but should only consider the value

---

4. *Hacker* relies on the following cases as authority: *Leisure v. Leisure*, 605 N.E.2d 755, 759 (Ind. 1993) (future income); *Skinner v. Skinner*, 644 N.E.2d 141, 146 (Ind.Ct.App.1994) (unvested pension); *McNevin v. McNevin*, 447 N.E.2d 611, 616 (Ind.Ct.App.1983) (unliquidated tort claim); *Loeb v. Loeb*, 261 Ind. 193, 199, 301 N.E.2d 349, 353 (1973) (vested remainder subject to complete defeasance not divisible); *Fiste v. Fiste*, 627 N.E.2d 1368, 1371–72 (Ind.Ct.App.1994) (remainder interest, whether vested or contingent, not marital property).

5. This rule would not apply where the real estate is titled in a third-party, and husband and/or wife are the contract purchaser. In that case, the parties have a vested interest in the contract, which is a marital asset, and their equitable interest in the real estate is not indeterminate but is derived from the contract. Neither would the rule apply where the real estate is titled in a partnership, corporation or other business organization in which the spouse has an ascertainable interest as a partner, shareholder or member.

of Wife's continued residence in the home. *See Hacker*, 659 N.E.2d at 1111. Like the husband in *Hacker*, the Dalls may have expected or hoped to take title to the home, but that had not occurred when their marriage ended. Nor is there evidence that Wife will definitely acquire title to the home. There are any number of circumstances that could prevent or discourage Father and Mother from transferring title to Wife, thereby preventing her from acquiring ownership.[6]

The dissent contends that by including the property in her financial declaration, "Wife has conceded that Husband had acquired an equitable interest in the marital real estate" and, hence, that she has waived the issue of whether the parties had a present vested interest in the real estate. We cannot agree. A financial declaration does not decide questions of law that are the province of the dissolution court. The record shows affirmatively that both in her trial brief and in closing argument, Wife argued that *Sovern* is distinguishable on its facts and that the real estate could not be included in the marital estate. Record at 100–105, 501–02. Thus, she has clearly preserved that issue for appeal.

It is the court's responsibility to determine whether a given property can be included in the marital estate. Our dissolution of marriage statute provides that "the court shall divide the property." *See* IND. CODE § 31–1–11.5–11. Thus, in a contested dissolution, the dissolution court is required to divide the marital property and may not delegate to one of the parties the power to decide when, if ever, to divide the property. *Henderson v. Henderson*, 401 N.E.2d 73, 74 (Ind.Ct.App.1980). Likewise, the dissolution court cannot delegate or leave to a nonparty the power to decide whether the parties to the marriage have a present vested interest in the real estate and the extent of that interest, if any.

It is axiomatic that a divorce decree does not affect the rights of nonparties. *Sovern*, 535 N.E.2d at 566. A party to a divorce who claims that the marital estate includes an equitable interest in real property titled in a nonparty should move to join the nonparty and to have the issue determined within the divorce proceedings. Unless the nonparty is joined, the dissolution court is powerless to adjudicate with certainty the extent of the marital property interest in the real estate, and any such determination is illusory. The failure to join a nonparty in whose absence complete relief cannot be accorded the parties to the marriage also runs counter to the statutory mandate that the dissolution court "shall divide" the marital property. Still, while joinder may be necessary to adjudicate the rights of the parties, joinder alone will not convert the property interest claimed into a present vested interest or bring it into the marital estate.

The dissent contends that the parties have waived any error arising from their failure to join Wife's parents as necessary parties. *See* Ind. Trial Rule 12(B)(7). However, reliance on the waiver doctrine does not resolve this case. Just as joinder alone does not convert the property interest claimed into a present vested interest or bring it into the marital estate, neither does the mere failure to join Wife's parents enable the court to issue an enforceable order dividing the real estate. We should not sanction a trial court order that purports to divide property in which the parties do not hold a present vested interest and that is unenforceable against interested nonparties.

Accordingly, we conclude that the trial court abused its discretion when it awarded Wife the marital residence and ordered her to pay Husband $29,298.27 in compensation for his interest in the home.[7] At most, the trial court may consider the value of the Wife's continued possession and residence in

---

6. For example, the evidence shows that Mother had refused to convey title to the property. Unless both Mother and Father consent to the conveyance, the property will remain in the parents' names. Further, the parents could well decide they need to retain the property for their own use or benefit and refuse to convey title to Wife.

7. We further note that the trial court's order, which directed Wife to secure the judgment by obtaining a mortgage on the home, is impossible for Wife to perform. Wife cannot mortgage the property because she is not the owner of the record title.

the home in determining a just and equitable division of the marital assets. We therefore reverse and remand to the trial court for further consideration consistent with this opinion.

Reversed and remanded with instructions.

SHARPNACK, C.J., concurs.

ROBERTSON, J., dissents with separate opinion.

ROBERTSON, Judge, dissenting.

I respectfully dissent. The divorce court's finding that the divorcing couple had acquired a vested, present, equitable interest in the martial real estate through their joint efforts, and perhaps also through completed gifts from Wife's parents, is supported by sufficient evidence of probative value.[8] Therefore, the trial court's distribution of some property to Husband (representing 15% of the marital estate), rather than no property (as required by the majority) is not clearly erroneous.

The majority has erroneously merged two distinct concepts—that of a present, vested, equitable interest in property titled in third parties and that of a nonvested or contingent interest. The divorce court is required to include the former type of interest in the marital pot in order to effect a just and reasonable distribution and is prohibited from including the latter. The case of *Sovern v. Sovern*, 535 N.E.2d 563 (Ind.Ct.App. 1989), recognizes this distinction in the nature of property ownership and should control the disposition of the present case. The case primarily relied upon by the majority, *Hacker v. Hacker*, 659 N.E.2d 1104 (Ind.Ct. App.1995), is easily distinguished from both

*Sovern* and the case at bar because *Hacker* involved the nonvested, defeasible expectation of an inheritance whereas *Sovern* and the case at bar involved property acquired by the joint efforts of the parties or by gift.

Indiana's "one pot" theory specifically prohibits the exclusion of any asset in which a party has a vested interest from the scope of the trial court's power to divide and award. *Hann v. Hann*, 655 N.E.2d 566, 569 (Ind.Ct.App.1995), *trans. denied.* The term "property," as used in the dissolution statute, "encompasses the complex group of jural relations between the owner of the physical object *and all other individuals.*" *In re Marriage of Lay*, 512 N.E.2d 1120, 1123 (Ind.Ct.App.1987) (Emphasis added). Nonvested property interests which are contingent and speculative in nature and in value, such as choses in action, are not marital property capable of division under Indiana's dissolution statute. *Mullins v. Matlock*, 638 N.E.2d 854, 856 (Ind.Ct.App.1994), *trans. denied.* Other nonvested, contingent interests, such as the expectation of an inheritance of real estate, are also not includable in the marital pot. *Hacker*, 659 N.E.2d at 1112–13.

Although record or legal title to real estate is the highest evidence of ownership, equitable titles in real estate are recognized. *Hughes v. Cook*, 126 Ind.App. 103, 130 N.E.2d 330, 335 (1955). It is well-settled that legal title and equitable title to one parcel of real estate may be vested in different persons. *See Hinds v. McNair*, 413 N.E.2d 586, 598 (Ind.Ct.App.1980). It is equally well-settled that an equitable interest may be a fixed and vested property right. *Id.*

---

8. Incidentally, as noted by the majority, Wife has conceded that Husband and she had acquired an equitable interest in the marital real estate but valued this interest at only $3,631.49. (Maj Op. p. 720 n. 1). The issue at trial was not whether the divorcing couple had a vested present interest in the marital real estate but was, instead, what value should be placed on that interest for inclusion in the marital pot. On appeal, Wife should be judicially estopped from asserting that, as a matter of law, the marital estate had no vested present interest in the real estate. *See L.D.H. v. K.A.H.*, 665 N.E.2d 43, 46 (Ind.Ct.App.

1996); *Dell v. City of Tipton*, 618 N.E.2d 1338, 1342 (Ind.Ct.App.1993) (Indiana appellate courts have long held that a party should be estopped from assuming successive positions in the same litigation with respect to the same fact or set of facts which are inconsistent and mutually contradictory), *trans. denied.* Thus, the majority has inappropriately transformed this case into one on the law defining marital property. Instead, this case merely involves the valuation of marital property, a question of fact within the broad discretion of the divorce court. *See Stetler v. Stetler*, 657 N.E.2d 395, 400 (Ind.Ct.App.1995), *trans. denied.*

In the present case, the evidence amply supports the trial court's conclusion that, regardless of how the real estate was titled, Husband and Wife had acquired a vested, present interest in it through their joint efforts. The evidence unequivocally demonstrates that Wife's parents offered to "give" Wife and Husband the marital residence in exchange for them moving their family nearby. Wife's parents had not offered to provide a home for the family just anywhere. The arrangement was made to accomplish the parents' objective of living near their daughter and her children. Thus, the trial court could reasonably have concluded that the arrangement was contractual in nature and not merely a promise to make a gift in the future. *See Newman v. Huff,* 632 N.E.2d 799, 806–07 (Ind.Ct.App.1994) (An arrangement to forgive debt and convey title in the future in exchange for consideration and performance is an enforceable contract, despite its characterization as a "gift."), *trans. denied.*

The contract was fully performed. Wife and Husband performed their part of the bargain by moving close to Wife's parents and contributing their financial resources and efforts in the construction of the house. Husband had invested some 2,400 hours of his own labor in the project. This amounts to well over a year of work at 40 hours per week with no holidays, sick days, or vacation. Thus, the divorcing couple had "sweat equity" in the real estate. The couple had also paid substantial sums toward taxes and insurance on the property and had ultimately paid for the appliances.

The contractual arrangement at issue here was not illegal, nor otherwise violative of public policy. *See Pigman v. Ameritech Publishing, Inc.,* 641 N.E.2d 1026, 1030 (Ind. Ct.App.1994) (As Indiana law recognizes that it is in the best interest of the public that persons should not be unnecessarily restricted in their freedom to contract, persons are permitted to enter into any agreement they desire so long as it is not illegal or contrary to public policy). Wife's parents got the benefit of the bargain and may now enjoy their daughter and grandchildren living close to them in a suitable home in their autumn years. On the other hand, the majority decision here strips Husband of his interests under the arrangement without compensation despite his full and substantial performance.[9]

Even if the arrangement to transfer the property to Husband and Wife would more appropriately be characterized as donative, rather than contractual, substantial evidence supports the trial court's judgment that the equity in the real estate had been transferred to the divorcing couple by completed gift. Considering the evidence of Wife's parents' long-standing practice of making substantial gifts to the couple and their desire that their daughter and their grandchildren live in a suitable home close to them, the trial court could reasonably have concluded that Wife's parents' contributions to the marital real estate had been completed gifts. That Wife's mother ultimately refused to execute a deed is not dispositive of the question of whether an equitable interest in the marital real estate had been transferred to the marital estate by completed gift. *See Walter v. Balogh,* 619 N.E.2d 566, 568 (Ind.1993) (The refusal of the donor to execute the necessary documents does not defeat the efficacy of a completed gift of real estate because equity looks to substance over form and will require that to be done which should have been done).

Finally, the evidence of the "mortgage payment" transaction between Wife's father and Wife is "smoking gun" evidence that, at the very least, a substantial portion of the equity in the marital real estate had been transferred to the divorcing couple by completed gift. It is common practice to structure gifts over time. *See McGinley–Ellis v. Ellis,* 622 N.E.2d 213, 216 (Ind.Ct.App.1993) (Parents transferred shares of stock over time to lessen their federal gift and estate tax liability), *property distribution portion summarily affirmed,* 638 N.E.2d 1249, 1253

---

9. I will refrain from drawing an analogy in the present case to the biblical story of Jacob's experience with his father-in-law. *See Genesis* 29:18–26 (Based upon a legal technicality and after full performance, father-in-law reneged on promise to give younger, more attractive daughter in marriage in exchange for seven years of labor).

(Ind.1994); *Walter,* 619 N.E.2d at 569 (Adopting the recitation of facts from our opinion reported at 604 N.E.2d 1226, 1229, which described a gifting arrangement whereby donor would forgive indebtedness on a real estate mortgage in the amount of $10,000.00 per person per year matching the annual gift tax donee exclusion under federal gift and estate tax provisions).

In the present case, according to Wife's testimony and as discussed by the majority, Wife's father would *give* her a check in the amount of $833.33 each month (which adds up to $10,0000.00 per year) and Wife would then issue Father a check in the same amount. Regardless of the precise tax or accounting purposes the "mortgage payment" practice had been intended to accomplish, it evidences, at the very least, that Wife's father had been transferring, by completed gift, an interest in the marital real estate to Wife (marital estate) at the rate of $10,000.00 per year.[10]

The *Sovern* court noted that the divorce court's judgment was not binding upon the nonparty parents, noting that, had the spouse whose parents held title to the marital real estate wished the court to adjudicate the respective ownership rights as between his parents and him, he could have joined them in the action. 535 N.E.2d at 567.[11] This comports with well-settled authority that any error arising from the failure to join an indispensable party may be waived. *See Arnold v. Dirrim,* 398 N.E.2d 442, 448 (1979); *Ligon Specialized Hauler, Inc. v. Hott,* 179 Ind.App. 134, 384 N.E.2d 1071, 1076 (1979) (We will not allow a party to sit idly by until appellate review before presenting appropriate motions for the joinder of additional parties.); *Warner v. Young America Volunteer Fire Department,* 164 Ind.App. 140, 326 N.E.2d 831, 838 (1975); *Burford v. Burford,* 182 Ind.App. 640, 396 N.E.2d 394, 397 (1979) (All persons having an interest in real estate are necessary parties to a partition action). Moreover, Ind.Trial Rule 19(C) expressly provides that the failure to join a party needed for a just adjudication may be raised by a T.R. 12(B)(7) motion. (T.R. 12(B)(7) expressly references T.R. 19). The failure to raise one's defenses available under T.R. 12 constitutes a waiver of these defenses. T.R. 12(B), (G); *Middelkamp v. Hanewich,* 173 Ind.App. 571, 364 N.E.2d 1024, 1028 (1976) (Rule 12(B)(7) defense of failure to join a party needed for just adjudication must be determined before trial or, if necessary, during trial), *trans. denied; Burger Man, Inc. v. Jordan Paper Products, Inc.,* 170 Ind.App. 295, 352 N.E.2d 821, 835 (1976), *trans. denied.*

The majority opinion contravenes this well-settled authority and places the divorce court in an untenable Catch 22. The majority correctly notes that the trial court is mandated by statute to divide all the marital property. Nevertheless, the majority goes on to hold that the divorce court is "powerless" to determine whether a divorcing couple has a vested interest in property titled in third persons unless those persons have been joined in the action. Thus, the majority decision may very well require divorce courts to join, sua sponte, any person who may own an interest in property jointly with either spouse as a party to the dissolution proceedings in order to fulfill its statutory duty of dividing all the marital property.

As stated in *Stetler,* 657 N.E.2d 395:

ration period); *Bartrom v. Adjustment Bureau, Inc.,* 618 N.E.2d 1, 9 n. 15 (Ind.1993) (Property acquired through the joint efforts of the parties which vests during the separation period may properly be included in the marital estate).

**10.** In the divorce court's provisional order, Husband was required to make five $800.00 "mortgage" payments (totaling $4,000.00) to Wife during the separation period in addition to the $800.00 per month he was ordered to pay in child support. In effect, Husband purchased $4,000.00 of Wife's equity in the marital real estate during the separation period. As $4,000.00 represents nearly 3% of the net marital estate, Husband's distribution could accurately be considered as only 12% of the pot vested at final separation. *See Herron v. Herron,* 457 N.E.2d 564, 567–68 (Ind.Ct.App.1983) (The trial court may properly credit a spouse for his payment of joint marital obligations during the sepa-

**11.** As noted by *Sovern* and the majority, it is axiomatic that a divorce decree does not affect the rights of nonparties. 535 N.E.2d at 566. Thus, as in *Sovern,* any court order which purports to affect the rights of the nonparty parents should be considered mere surplusage and harmless. *Id.* at 567.

We presume the divorce court correctly followed the law and made all the proper considerations in crafting its property distribution. The presumption in favor of the correct action by the trial court is one of the strongest presumptions applicable to our consideration on appeal.

*Id.* at 398 (Citations omitted). In the present case, the trial court's finding that the divorcing couple had acquired an equitable interest in the marital real estate is amply supported by evidence, and thus, is not clearly erroneous. Under the circumstances, I cannot conclude that the divorce court's distribution of 15% of the marital property to Husband was not just and reasonable. Therefore, I would affirm.