Bernard COAK, Appellant (Defendant Below),

v.

Erma J. REBBER (Coak), Appellee (Plaintiff Below).

No. 3–281A44.

Court of Appeals of Indiana, Third District.

Aug. 31, 1981.

Rehearing Denied Oct. 21, 1981.

Dennis D. Sutton, Wesley N. Steury, Burt, Blee, Hawk & Sutton, Fort Wayne, for appellant.

DuWayne W. Herman, Torborg, Miller, Moss & Harris, Fort Wayne, for appellee.

STATON, Judge.

Bernard Coak appeals from a judgment of garnishment rendered in favor of Erma J. Rebber, his former wife, on her verified motion for proceedings supplemental.[1] Al-

1. Mrs. Rebber filed an action to collect the arrearages in support payments for the care of the couple's six children. On June 19, 1979, she was awarded a judgment in the amount of

though Coak raises twelve issues on appeal, many of his contentions are interrelated. We will, therefore, take the liberty of fashioning a more workable format for our discussion. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). In essence, Coak asks:

(1) Was there sufficient evidence for the court to have set aside the stock transfer as being fraudulent and thereby order that the monthly installment payments were subject to execution?

(2) Were the proper and necessary parties before the court?

(3) Did the court err in considering the issue of the stock transfer as it was not specifically raised in Mrs. Rebber's verified motion for proceedings supplemental?

(4) Was the judgment granted by the court improper in view of the relief sought by Mrs. Rebber?

We affirm.

## I.

### Monthly Payments

On February 4, 1963, Coak was ordered to pay $50 a week to Mrs. Rebber for the support of their six minor children.[2] He, however, neglected to comply with this order. On June 19, 1979, the court concluded that an action to enforce support is governed by a ten-year statute of limitations and, thereby, awarded Mrs. Rebber a judgment of $23,492.30 for arrearages existing only within the ten-year period. Mrs. Rebber filed a verified motion for proceedings supplemental on October 30, 1979, nearly five months after entry of judgment. On November 27, 1979, the parties appeared in person and with counsel before the court.

$23,492.30. Nearly five months later, she filed the action-at-bar in an effort to collect upon the judgment.

**2.** As of June 19, 1979, four of the six Coak children were emancipated.

**3.** In ruling upon the motion to correct errors, the court amended its original judgment to reflect Coak's 50 percent ownership of Tire World at the time of the transfer. Initially, the

They presented evidence as well as filed post-hearing briefs.

On March 26, 1980, the court concluded that Coak was the owner of one half of the shares of stock in the corporation known as Tire World, Inc.[3] and made the following findings:

"2. That sometime in the year 1975, the Respondent transferred the ownership of said shares of stock to his then wife, CAROL COAK.

"3. That said transfer of stock was for less than fair consideration.

"4. That said transfer of stock was fraudulent as to the Petitioner, ERMA J. REBBER (COAK), who was a creditor at the time of the transfer in the amount of Sixteen Thousand, Seventy and 00/100 ($16,070.00) Dollars, which amount credits the Respondent for support payments made since July 10, 1968, through 1975, in the total sum of Three Thousand, Four Hundred Thirty and 00/100 ($3,430.00) Dollars.

"5. That the corporation known as TIRE WORLD, INC., is presently receiving monthly installment payments in the amount of One Thousand Eight Hundred Twenty and 86/100 ($1,820.86) Dollars from J & J Distributors, Inc., contract purchaser of building and good-will of TIRE WORLD, INC.[4]

"6. That the creditor-petitioner, ERMA REBBER (COAK) is entitled to garnishment of One Hundred Percent (100%)[5] of the monthly installments until the sum of Sixteen Thousand Seventy and 00/100 ($16,070.00) Dollars is paid in full.

"7. IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that, be-

court had found Coak to be the sole owner of the Tire World stock.

**4.** The court specifically found that "basically the entire operating business" of Tire World was sold.

**5.** The judgment was amended to show J. & J. Distributors need only pay one-half of the monthly installment payments to the clerk of the court.

cause of the transfer of stock by the Respondent, the Petitioner is entitled to garnishment of the monthly installment payments from J & J Distributors, Inc. to TIRE WORLD, INC.

"8. That the Garnishee-Defendant, J & J Distributors, Inc., pay the monthly installments [*sic*] payments for One Thousand, Eight Hundred Twenty and 86/100 ($1,820.86) Dollars [6] to the Clerk of this Court until the sum of Sixteen Thousand, Seventy and 00/100 ($16,-070.00) Dollars, plus interest in the amount of Five Thousand, One Hundred Forty-Two and 40/100 ($5,142.40) Dollars, the total amount of Twenty-One Thousand, Two Hundred Twelve and 40/100 ($21,212.40) Dollars is paid into the Clerk of this Court."

On March 28, 1980, a garnishment order, pursuant to the judgment, was filed [7] with the court.

Claiming that the monthly installment payments were not his property and, therefore, that they were not properly subject to execution, Coak contends that the court exceeded its authority in ordering that one-half of these payments be garnished. He complains that "there was no allegation made, nor any evidence presented, to show that the contract installment payments from J. & J. Tire Distributors, Inc. to Tire World, Inc. were the property of Coak, the judgment debtor, and thus subject to execution."

■ In order to evaluate Coak's claims as to the insufficiency of evidence, we need to review the testimony taken at the November 27, 1979 hearing. Unfortunately, no recording was made of this hearing. It is apparent, however, from the court's findings that it considered Coak's transfer of his half of the Tire World stock to be fraudulent as to Mrs. Rebber. As such, it set the transfer aside. *See Arnold v. Dirrim* (1979), Ind.App., 398 N.E.2d 442 for a discussion of the indicia of fraudulent transfer. With the vacation of the transfer, Coak became

owner of half of the Tire World stock. The court, as a matter of equity, seemingly chose to disregard the function of Tire World as being a legal entity and concluded, in order to prevent fraud and injustice, that such a separate legal entity did not exist. *See Storm v. Marsischke* (1973), 159 Ind.App. 136, 304 N.E.2d 840, 844. Again, we are hampered in our analysis by a sparse record and the absence of the evidence presented at the hearing on the motion for proceedings supplemental. It is, however, clear from the judgment that the court considered one half of the J. & J. monthly installment payments to be Coak's property and properly subject to execution.

Coak's arguments as to the sufficiency of evidence concerning the fraudulent status of the stock transfer and the subsequent "piercing of the corporate veil" must fail. Without a record of the evidence taken at the hearing on the motion for proceedings supplemental, this Court is unable to review the propriety of the court's action. We are bound by the court's findings and must assume that the record fully supports the findings and the action of the court. *Mitchell v. Godsey* (1944), 222 Ind. 527, 53 N.E.2d 150.

## II.

### Necessary Parties

Complaining that the court erred in failing to have all the necessary parties before it, Coak charges that the rights of the present Mrs. Coak and Tire World, Inc. were determined in an action to which they were not made parties. He claims that they should have been made parties to the cause in order for the court to have made a complete adjudication of the issues concerning the property subject to execution.

■ Unfortunately, however, Coak neglected to consider the possible joinder of these parties at the trial court level. If he had felt that the presence of Tire World

<hr>

6. *See* fn. 5.

7. The garnishment has been stayed pending the outcome of this appeal.

and Mrs. Coak [8] as parties was necessary to a just adjudication, he could have made a motion before or during the hearing to have joined them as parties. Ind.Rules of Procedure, Trial Rule 19(A). This he failed to do. As this Court stated in *Ligon Specialized Hauler, Inc. v. Hott* (1970), Ind.App., 384 N.E.2d 1071, 1076:

> "We will not allow a party to sit idly by until appellate review before presenting appropriate motions for the joinder of additional parties. To hold otherwise would be to transform such trials into quagmires of competing irrelevancies since a defendant's silence regarding indispensible parties would guarantee a new trial following appellate reversal."

*See also Arnold v. Dirrim, supra,* 398 N.E.2d at 448.

### III.

### Specific Allegations

Coak next contends that he was not given proper notice of the nature of the remedy sought by Mrs. Rebber. He points to the language of the motion for proceedings supplemental which ordered him to appear in court "to testify concerning his property", and he further points out that "there was nothing in Mrs. Rebber's motion to indicate the nature of the stock transfer would be questioned."

■ Coak is correct in that the pleading did not specify that the Tire World stock transaction was to be raised as an issue. Such specificity, however, is not necessary. Ind.Rules of Procedure, Trial Rule 69(E). The pleading set forth, in general terms, that Mrs. Rebber owned the $23,492.30 judgment rendered against Coak and that she had no reason to believe a levy of execution against Coak would satisfy the judgment. She alleged that the judgment was unsatisfied and asked the court to order Coak to appear and testify about his property. Her motion was well within the intent and purpose of TR. 69(E).

It is difficult for us to give serious consideration to Coak's lack of notice argument in view of the information revealed by the record. Coak was served with a verified motion for proceedings supplemental in which he was ordered by the court "to appear to testify concerning his property." He was also served with a subpoena duces tecum in which he was ordered to appear and bring with him all "personal checking and savings account statements for 1978 through the present date, all documentation of ownership in Tire World, Inc. including the corporate minute book, and your personal tax returns from 1966 through 1978 and corporate tax returns for Tire World, Inc. from 1973 through 1978." His present wife, Mrs. Coak, also received a subpoena duces tecum in which she was ordered to appear before the court with "checking account statements for 1978 through present date, and all records of ownership including stock certificates in Tire World, Inc." It is clear to us that the court's consideration of the nature of the Tire World stock transaction was almost a certainty. There is no merit in Coak's argument.

### IV.

### Improper Relief

■ Finally, Coak argues that the motion for proceedings supplemental was to be used only for the purpose of gathering information about his property. He claims that the court erred in granting relief outside the theory of Mrs. Rebber's complaint by ordering the application of a portion of his property towards the satisfaction of the judgment. This very argument was rejected by this Court in *Baker v. Powell* (1953), 124 Ind.App. 77, 114 N.E.2d 894. There the Court concluded that as long as a judgment creditor proceeded by the proper statutory allegations, the court could make an order for the application of the defendant's income or property toward the satisfaction of the judgment within the limits of the act.

---

8. Mrs. Coak did appear at the hearing. Pursuant to a subpoena duces tecum, she brought a

number of Tire World documents with her.

See IC 1971, 34–1–44–1 *et seq.* There is no error here.

Judgment affirmed.

HOFFMAN, P. J., concurs.

GARRARD, J., concurs in result.