

FILED

Feb 18 2020, 5:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren A. Craig
Emily J. Schmale
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
VIJAI AND SUSHMA TYAGI

Thomas A. Whitsitt
Whitsitt Nooning & Kruse, P.C.
Lebanon, Indiana

ATTORNEYS FOR APPELLEE
VICHITRA TYAGI

Michael J. Andreoli
Zionsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Vinita Singh Tyagi,

*Appellant-Petitioner,*

v.

Vichitra Tyagi,

*Appellee-Respondent;*

Vijai and Sushma Tyagi,

*Appellees-Intervenors.*

February 18, 2020

Court of Appeals Case No.
19A-DR-607

Appeal from the Boone Superior
Court

The Honorable Matthew C.
Kincaid, Judge

Trial Court Cause No.
06D01-1610-DR-428

**Pyle, Judge.**

# Statement of the Case

[1]	Vinita Singh Tyagi ("Wife") appeals the trial court's order excluding from the marital estate a company and residence she claims are owned by Vichitra Tyagi ("Husband"). Wife argues that the trial court erred in finding that Hoosier Broadband LLC ("HBB") and a residence located in Zionsville (the "Real Estate") are owned by Husband's parents, Sushma Tyagi ("Sushma") and Vijai Tyagi ("Vijai") (collectively, "Husband's parents"), and thus are not marital assets. Concluding that the trial court did not abuse its discretion by finding that HBB and the Real Estate, which are both titled or owned by Husband's parents, are not marital assets and to be excluded from the marital estate, we affirm the trial court's judgment.

[2]	We affirm.

# Issue

> Whether the trial abused its discretion when it found that property titled or owned by Husband's parents were not marital assets.

# Facts

[3]	Husband and Wife married on September 21, 2007. Wife filed to dissolve the marriage in October 2016. In September 2017, Husband's parents, Sushma and Vijai, filed a motion to intervene in the dissolution proceedings on the grounds that Sushma owns HBB and Vijai owns the Real Estate. In the motion, Husband's parents argued that the dissolution proceedings may "impair or

impede [their] ability to protect their interests in their property and their interest is not adequately represented by existing parties." (App. Vol. 2 at 17). The trial court granted the motion to intervene in October 2017.

[4] Husband and Wife then jointly moved to bifurcate the dissolution proceedings and requested that the trial court determine, apart from the rest of the proceedings, whether HBB and the Real Estate should be included in the marital estate as marital assets. The trial court granted the bifurcation and held the separate hearing in January 2019. At the hearing, the trial court heard testimony from Wife, Husband, Sushma, Vijai, and a former HBB employee.

[5] Testimony at the hearing revealed that HBB was established in 2004 by Husband and two non-parties, Matt Campbell and James Hessman ("Hessman"). Husband prepared the LLC Agreement and was listed as the "President and Chief Executive Officer" and "Chief Financial Officer and Secretary[.]" (Vinita's Ex. F). In 2005, after suffering some financial difficulties and in an effort to avoid potential conflicts with his then-employer, Husband transferred his seventy-five percent (75%) ownership interest in HBB to Sushma. Sushma did not pay Husband to acquire his interest in HBB and there is no written agreement evidencing the transfer of ownership. Husband continued his employment at HBB in his previous roles, and he also became the Chief Technology Officer.

[6] Around the time that Husband and Wife were married in 2007, Wife began helping Husband with HBB and eventually became HBB's Chief Operating

Officer. As part of her duties, she assisted HBB in obtaining a line of credit from Chase Bank ("Chase LOC") in 2008. Wife testified that she first became aware that HBB was owned by Sushma while assisting with the Chase LOC. Wife explained that after she and Husband had met with a banker, prepared the necessary financial documents, and obtained approval for the loan, Husband informed her that Sushma's signature would be required because HBB "was technically under [his] mom's name." (Tr. Vol. 2 at 162). After HBB obtained the Chase LOC, Wife told Husband to ask his mother to have HBB's ownership transferred to reflect him as the owner. Husband complied, and Sushma refused Husband's request. Subsequent requests to transfer ownership were also denied, and Sushma testified that she never represented that she would ever transfer ownership to Husband. As a result, Husband and Wife began purchasing real estate in India in their names jointly.

[7]    Hessman left HBB in 2008 and later filed suit against the company in 2011, claiming an interest in HBB. Hessman's claim was settled in 2012 for $75,000. As a result of the settlement, Sushma acquired 100 percent (100%) of the ownership interest in HBB, as reflected in subsequent business documents and tax returns. Wife testified that she was aware of Hessman's litigation and that she gave a deposition in connection with the dispute.

[8]    Sushma acknowledged that she was not familiar with the financial affairs and that her son had taken the lead role in that area. She further explained that she has no control over Husband's salary stating that, "he just told me. He decide[s]." (Tr. Vol. 2 at 109). As a result, Husband and Wife have enjoyed all

of the financial benefits of HBB. Their salaries varied from year-to-year depending on HBB's annual profitability. Sushma and Vijai have reaped no financial benefits and instead have an "emotional stake" in "seeing [Husband] succeed and seeing the business succeed as well[.]" (Tr. Vol. 2 at 128).

[9] The testimony also revealed that in 2009, Vijai purchased the Real Estate on the advice of his son who was looking for a business location and residence.[1] In order to fund the down payment, Vijai contributed $60,000 and borrowed another $60,000 from Husband. Vijai and Husband did not execute a note to evidence the contribution by Husband. In 2012, the Real Estate's mortgage was refinanced and Vijai contributed $11,000 and borrowed $11,000 from Husband to put towards the refinance.[2] This second contribution by Husband was also not reduced to writing. Vijai is the only obligor on the mortgage loan, and the real estate taxes and homeowner insurance for the Real Estate are also in Vijai's name. Similar to the ownership of HBB, Wife desired to have the Real Estate transferred to reflect Husband as the owner. She made several requests to Husband, who in turn asked his father to convey the Real Estate to him. Vijai denied the requests and testified that he never represented to Husband or Wife that he would convey title to the Real Estate to the couple.

---

[1] Testimony revealed that the Real Estate was used primarily as a residence for Wife, Husband, and Husband's parents. HBB operated out of two rooms, and Vijai received rent from the company in the amount of $4,900 per month, which was sufficient to cover the mortgage, insurance, and taxes. There was no written lease agreement between Vijai and HBB regarding the use of space or the monthly payments.

[2] The parties do not dispute that the payments made to Vijai to assist in the purchase and refinance of the Real Estate, totaling $71,000, were loans that remain unpaid and collectively are a marital asset.

[10] At the conclusion of the hearing, the parties agreed that they would not make final oral arguments. Rather, with the trial court's permission, the parties submitted post-trial briefs. In Wife's post-trial brief, she suggested that Husband fraudulently transferred his interest in HBB to Sushma and argued that: (1) HBB's corporate form has been so disregarded that it is appropriate to consider HBB as Husband's alter ego; and (2) that HBB is the true owner of the Real Estate and, therefore, both should be considered marital assets. Thereafter, the trial court found that "HBB and the Real Estate are not marital assets and rather are property of [Sushma and Vijai][.]"[3] (App. Vol. 2 at 13). Wife now appeals.

## Decision

[11] Wife argues that the trial court erred by finding that HBB and the Real Estate are not marital assets and excluding them from the marital estate.[4] Husband

---

[3] The trial court entered the judgment as a final judgment.

[4] Wife also claims that HBB was Husband's alter ego, and, therefore, the company should be considered a marital asset. In support, she relies on a Nebraska Supreme Court decision that held that "[w]hen a corporation is or becomes the mere alter ego, or business conduit, of a person, it may be disregarded." *Medlock v. Medlock*, 642 N.W.2d 113, 124 (Neb. 2002). The *Medlock* court applied an "alter ego" doctrine to a divorce action in which the husband was the president of a nonprofit religious corporation. The Nebraska court reasoned that equity demanded the inclusion of the nonprofit corporation's assets in the distribution of the parties' marital estate. The record showed that the husband made extensive personal use of corporate funds and assets, and he carried on personal dealings in the name of the corporation. Additionally, the husband regularly purchased goods and services in the corporate name for his family's personal use. In reaching its decision, the *Medlock* court explained that the parties owned no personal property in their own names because "all property that would ordinarily have been acquired during their 28-year marriage was instead acquired in the name of the [nonprofit]." *Id.* at 125.

There is no dispute that Husband and Wife benefited greatly from Husband's parents' extreme generosity. Here, the testimony revealed that Husband and Wife both received an income while working at HBB.

counters that the trial court correctly found that HBB and the Real Estate are owned by Sushma and Vijai and, therefore, not marital assets. We agree with Husband.

[12] Neither party requested special findings and the court made no findings *sua sponte*. In the absence of special findings, we apply a general judgment standard of review. *Perdue Farms, Inc. v. Pryor*, 683 N.E.2d 239, 240 (Ind. 1997). Under this standard, we presume that the court correctly followed the law, and we do not reweigh the evidence or reassess the credibility of witnesses. *Id*. We will affirm if the judgment is "sustainable upon any theory consistent with the evidence." *Id*.

[13] It is well-settled that in a dissolution action, all marital property, whether owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts, goes into the marital pot for division. IND. CODE § 31-15-7-4(a); *Falatovics v. Falatovics*, 15 N.E.3d 108, 110 (Ind. Ct. App. 2014). For purposes of dissolution, property means "all the assets of either party or both parties[.]" I.C. § 31-9-2-98. This "one pot" theory ensures that all assets are subject to the trial court's power to divide and award. *Hill v. Hill*, 863 N.E.2d 456, 460 (Ind.

Significantly, Wife testified that as a result of Sushma's denials to transfer ownership of HBB to Husband, the couple purchased properties in India in their names jointly. Additionally, testimony indicated that Husband and Wife own a home in Illinois. Unlike in *Medlock* where there was an inadequate marital estate, here, the evidence reveals otherwise. Thus, we are unpersuaded by *Medlock* and its analysis.

Ct. App. 2007). The division of marital assets, including a determination as to whether an asset is a marital asset, is within the trial court's discretion. *Antonacopulos v. Antonacopulos*, 753 N.E.2d 759, 760 (Ind. Ct. App. 2001). This court will reverse the determination of a trial court only if that discretion is abused. *Id*. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id*.

[14] Specifically, Wife contends that "[Husband] owns HBB, and HBB in turn owns the Real Estate" and, therefore, they are both marital assets. (Vinita's Br. 20). She directs us to *Sovern v. Sovern* for the proposition that "[b]are legal title alone does not eliminate either the property or the investment thereon from being a part of the marital estate to be considered by the Court in arriving at an equitable division." *Sovern v. Sovern*, 535 N.E.2d 563, 565 (Ind. Ct. App. 1989), *reh'g denied*. In *Sovern*, the property in question consisted of two parcels of real estate, a marital residence, and an automobile shop. The facts supporting the judgment reveal that while the husband's parents held legal title to the parcels, the husband and wife used marital resources to construct the residence. The husband and wife also held themselves out as the owners of the residence, the house was insured in both their names, and the homeowner's policy did not reflect an insurable interest held by the parents. The parents, who were not joined as parties to the dissolution proceeding, did not claim an interest in the real property and were willing to deed the property to the couple. Based on

these facts, this Court affirmed the trial court's inclusion of the property in the marital estate because husband and wife had a vested interest in the real estate.

[15] Here, however, Wife does not argue on appeal that she or Husband possess a vested interest in HBB or the Real Estate. Rather, she argues that HBB and the Real Estate are divisible marital assets because they are owned by Husband. As such, the instant case is distinguishable from *Sovern*. *See In re Marriage of Dall*, 681 N.E.2d 718, 722 (Ind. Ct. App. 1997) (limiting the *Sovern* decision to the specific facts of the case and concluding that "an equitable interest in real property titled in a third-party, although claimed by one or both of the divorcing parties, should not be included in the marital estate."); *see also Vadas v. Vadas*, 762 N.E.2d 1234, 1236 (Ind. 2002) (distinguishing *Sovern* and *Dall* and concluding that "[t]he holding of *Dall* promotes predictability, consistency and efficiency by excluding 'remote and speculative' interests from the marital estate.").

[16] Our review of the evidence reveals that Sushma and Vijai intervened in the dissolution proceeding to assert their respective ownership interests in HBB and the Real Estate. Testimony at the hearing revealed that HBB was established in 2004. Sushma acquired Husband's interest in the company in 2005, which was two years prior to Husband and Wife's marriage in 2007. Following the settlement of Hessman's lawsuit in 2012, Sushma then acquired 100 percent ownership of the company, which is reflected in the company's business and tax documents. In addition, Wife acknowledged that she had asked Husband to persuade his mother to transfer ownership of HBB to him, which Sushma

denied. Given the evidence before the trial court, it found that HBB was owned by Sushma.

[17] Similarly, Vijai acquired the Real Estate, which was deeded in his name only, in August 2009. Vijai paid the mortgage, real estate taxes, and homeowner insurance, which were also in his name. Moreover, Wife testified that she did not know of anything evidencing that Husband had an ownership interest in the Real Estate. This was confirmed by Vijai who testified that he never represented that he would convey title of the Real Estate to Husband.

[18] Accordingly, Wife has failed to show that Husband owns HBB and the Real Estate. Thus, we conclude that the trial court did not abuse its discretion in finding that HBB and the Real Estate are owned by Susma and Vijai and, therefore, were not marital assets. *See Estudillo v. Estudillo*, 956 N.E.2d 1084, 1091 (Ind. Ct. App. 2011) ("[A] trial court may not distribute property not owned by the parties."), *reh'g denied*; *see also Nicevski v. Nicevski*, 909 N.E.2d 446, 449 (Ind. Ct. App. 2009) (trial court erred in including marital home in marital estate where husband and wife lived in marital home legally titled to husband's parents, husband and wife disputed origin of money used to purchase the home, and husband's parents were not joined as necessary nonparties), *trans. denied*. Accordingly, we affirm the trial court's judgment.[5]

---

[5] To the extent that Wife argues that the trial court failed to void the 2005 fraudulent transfer of Husband's interest in HBB to Sushma, we conclude that Wife has waived appellate review of this argument. As we

Affirmed.

Robb, J., and Mathias, J., concur.

---

have previously explained, any grounds not raised in the trial court are not available on appeal. *Grace v. State*, 731 N.E.2d 442, 444 (Ind. 2000), *reh'g denied.* Below, Wife did not argue that the 2005 transfer of Husband's interest was fraudulent. While she made a passing reference in the post-trial brief that "[t]he case at hand reflects a fraudulent transfer of interest[,]" she did not further develop the argument. (App. Vol. 2 at 102). For these reasons, we find her argument on appeal to be waived. *See Showalter v. Town of Thorntown*, 902 N.E.2d 338, 342 (Ind. Ct. App. 2009) (explaining that "[t]he rule of waiver in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or arguments that it never had an opportunity to consider. Conversely, an intermediate court of appeals, for the most part, is not the forum for the initial decisions in a case."), *trans. denied*.

Waiver notwithstanding, Wife's claim fails. Her reliance on *Coak v. Rebber* is misplaced. 425 N.E.2d 197 (Ind. Ct. App. 1981), *reh'g denied*. She contends that the *Coak* court "confirmed [that] there are circumstances in the *divorce context* that an Indiana court may disregard the function of [the corporation] as being a legal entity and conclude, in order to prevent fraud and injustice, that such a separate legal entity did not exist." (Vinita's Br. 16). (quotation and citation omitted) (emphasis added). However, in *Coak*, Coak's former wife filed a garnishment action against Coak to collect "arrearages in support payment for the care of the couple's six children." *Coak*, 425 N.E.2d at 198. In that proceeding, the former wife challenged a transfer of stock Coak had made to his present wife. Importantly, this Court noted that the transfer was fraudulent because Coak's former wife was a creditor at the time of transfer. Here, the transfer of ownership interest occurred two years before Husband and Wife married, and she has not alleged that she was a creditor at the time of transfer.