FILED

Jun 30 2020, 6:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Andrew Z. Soshnick
Tina Dukandar
Faegre Drinker Biddle & Reath LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Brian K. Zoeller
Nicole Makris
Cohen & Malad, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Scott A. Bringle,

*Appellant/Cross-Appellee-Respondent,*

v.

Traci A. Bringle,

*Appellee/Cross-Appellant-Petitioner.*

June 30, 2020

Court of Appeals Case No.
19A-DN-3007

Appeal from the Decatur Circuit
Court

The Honorable Timothy B. Day,
Judge

Trial Court Cause No.
16C01-1710-DN-560

**Najam, Judge.**

## Statement of the Case

Scott A. Bringle ("Husband") appeals and Traci A. Bringle ("Wife") cross-appeals the trial court's decree of dissolution of their marriage. Husband and Wife raise the following issues for our review:

1.      Whether the trial court erred when it did not include as a marital liability a debt owed by Husband to an S corporation in which Husband is the sole shareholder.

2.      Whether the court erred when it deviated from the presumption of an equal division of the martial estate.

3.      Whether the court erred when it did not order Husband to pay Wife's attorney's fees.

We affirm.

## Facts and Procedural History

Prior to their marriage, Husband formed Center Line Precision Technology, Inc. ("the Company"), a contract manufacturer engaged primarily in the precision machining and manufacturing of orthopedic and other medical devices.  The Company is organized for tax purposes as an S corporation in which Husband is the sole shareholder.  During the marriage, and prior to the filing of the petition for dissolution, the Company "sold" Husband the real estate where the Company is located (the "business real estate") for $480,000. In 2017, the Company transferred the business real estate to Bringle Properties, LLC, an entity owned by Husband and his son from a previous marriage.  The Company also paid various personal expenses for Husband.  Those transactions would later appear as a $659,707 receivable "due from shareholder" on the Company's balance sheet.  Appellant's App. Vol. 2 at 39 n.10.

[4]     Thereafter, on October 31, 2017, Wife filed a petition to dissolve the marriage. At the final hearing two years later, in October 2019, Husband acknowledged that he had "mingled personal and business expenses." Tr. at 147. Husband testified that during the marriage and while the dissolution was pending he paid personal bills "out of the Company" and explained that it was advantageous to "run the bills through the Company" because those payments were treated as "dividends" (i.e., distributions) rather than earned income subject to payroll taxes. *Id.* Husband testified that the transfer of the business real estate and the personal expenses paid by the Company were shown as "shareholder debt" on the Company's balance sheet "for tax purposes" to avoid having to pay income taxes "at that time." *Id.* Husband also testified that the shareholder debt would "be paid whenever." *Id.* at 147, 161-62.

[5]     In connection with the dissolution, Husband and Wife jointly retained a business valuation company, Houlihan Valuation Advisors ("Houlihan"), to appraise the fair market value of the equity interest in the business. The Houlihan valuation arrived at a $1,050,000 opinion of value for the business using a combination of market-based and income-based valuation methods. In its valuation, Houlihan stated that "[t]he $659,707 note due from shareholder would be deemed a non-operational asset. We understand this comprises about $480,000 amount due from the transfer of the [business real estate] to Bringle Properties, LLC and about $180,000 for personal expenses paid by the Company." Appellant's App. Vol. 2 at 41. The valuation report also included the following footnote:

We have included a "Due from Shareholder" amount of $659,707 in the value of [the Company]. According to [Husband] and his CPA, this consists of the cost of the [business real estate] of $480,000 plus other personal obligations paid by the [Company]. *Since the receivable is included in the value of the [Company,] a liability of $659,707 to the [Company] should be included in the marital balance sheet.*

*Id.* at 39 n.10 (emphasis added).

[6] Following the final hearing, the trial court entered its decree dissolving the marriage of the parties. In its decree, the court found and concluded, in relevant part, with respect to the division and distribution of the marital estate, as follows:

8. [Wife] requested an unequal division of the marital estate in her favor based upon a disparity between the parties' incomes and earning abilit[ies]. The evidence showed that [Wife] is a licensed real estate agent. She re-entered that vocation while this matter was pending. She received the benefit of temporary maintenance ordered by the Court to compensate for her diminished earning ability. As of the final hearing, [Wife] was very active in the real estate market, having sold in excess of [$4,000,000] in real estate while this matter was pending. Based upon this and the other findings herein, the Court does not determine that [Wife] should receive more than the presumptive equal division of the "marital pot."

9. [Husband] also requested an unequal division of the marital estate in his favor. His reasons included the fact that he had owned/acquired most of the marital assets prior to the marriage without contribution from [Wife]. He further took exception to the value placed upon his business . . . . He argued that his

business had no value as an ongoing business entity because he was so heavily involved in the operations.

10. The Court finds that [Husband] did enter this marriage with most of the marital assets, including the business and the real estate from where the business operates. The Court also recognizes that [Husband] is a significant part of the business at issue in this dissolution, a business he started many years prior to the parties' marriage. [Wife] did bring assets to the marriage and essentially contributed to the marriage what she had. The Court is also considering that the nature of the marital estate will require [Husband] to acquire a significant amount of cash to pay to [Wife] her share of the marital estate[,] which will affect his overall financial well-being for a significant amount of time.

11. Based upon the evidence presented, a deviation from the presumptive equal division of the martial estate should be made. An equitable division of the marital estate would be a division of [60%] of the net marital estate to [Husband] and [40%] to Wife . . . .

*Id.* at 22-23. The court awarded the Company to Husband valued at the Houlihan appraised value of $1,050,000 but did not recognize the $659,707 receivable due from shareholder or shareholder debt as a liability of the marital estate. The court ordered Husband to pay Wife a reconciliation payment of $361,998.56, and the court ordered Husband and Wife to pay their own attorneys' fees. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[7] Dissolution actions invoke the inherent equitable and discretionary authority of our trial courts, and, as such, we review their decisions with "substantial deference." *See, e.g.*, *R.W. v. M.D. (In re Visitation of L-A.D.W.)*, 38 N.E.3d 993, 998 (Ind. 2015). Here, the trial court supported its exercise of that authority with findings of fact and conclusions thereon following an evidentiary hearing. As our Supreme Court has stated:

> The trial court's findings were entered pursuant to Ind. Trial Rule 52(A) which prohibits a reviewing court on appeal from setting aside the trial court's judgment "unless clearly erroneous." The court on appeal is further required to give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." When a trial court has made special findings of fact, as it did in this case, its judgment is clearly erroneous only if (i) its findings of fact do not support its conclusions of law or (ii) its conclusions of law do not support its judgment. *Estate of Reasor v. Putnam County*, 635 N.E.2d 153, 158 (Ind. 1994). Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Reasor*, 635 N.E.2d at 158.

> When reviewing valuation decisions of trial courts in dissolution actions, a similar standard of review has been enunciated: that the trial court has broad discretion in ascertaining the value of property in a dissolution action, and its valuation will not be disturbed absent an abuse of that discretion. *Cleary v. Cleary*, 582 N.E.2d 851, 852 (Ind. Ct. App. 1991). The trial court does not abuse its discretion if there is sufficient evidence and reasonable inferences therefrom to support the result. *Id.* In other words,

we will not reverse the trial court unless the decision is clearly against the logic and effect of the facts and circumstances before it. *Porter v. Porter*, 526 N.E.2d 219, 222 (Ind. Ct. App. 1988), *trans. denied*. A reviewing court will not weigh evidence, but will consider the evidence in a light most favorable to the judgment. *Skinner v. Skinner*, 644 N.E.2d 141, 143 (Ind. Ct. App. 1994).

*Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996).

In addition, here, the trial court entered special findings *sua sponte*, and those findings do not expressly address the shareholder debt to the Company. Where a court enters findings *sua sponte*, the Trial Rule 52(A) standard of review applies to those findings, and the general judgment standard applies to any matter not covered by those findings. *Crider v. Crider*, 26 N.E.3d 1045, 1047 (Ind. Ct. App. 2015). For any issue not covered by the court's findings, we apply the general judgment standard and will affirm if it can be sustained on any legal theory supported by the evidence. *Id.*

## Issue One: The "Shareholder Debt" to the Company

### The Status Conference

Husband contends that during a November 2019 status conference the trial court "ma[de] clear that it mistakenly thought" that Husband's debt to the Company was "taken into account" in the Houlihan valuation and that this was an "erroneous assumption." Appellant's Br. at 7, 11. Husband further alleges that, during the status conference, the trial court acknowledged Husband owed a personal debt to the Company but then did not include that debt in the decree

of dissolution. Husband also suggests that the trial court "appears to have ignored" the Houlihan valuation and the trial testimony of the Houlihan appraiser, and Husband alludes to "overall confusion," which he seems to attribute to the court. *Id.* at 11. We need not attempt to understand this argument. Husband did not include a copy of the status conference transcript in the record on appeal. And, in any event, we would decline to give any consideration or weight to Husband's characterization and speculation about the meaning of the court's remarks during a status conference. This is at best parol evidence.

[10] If the statement Husband attributes to the trial court were in evidence, the statement would indicate, if anything, that the court was aware of Husband's debt to the Company. The Houlihan valuation did take Husband's debt to the Company into account, Husband's debt to the Company appears on the Company's balance sheet, and Husband's debt to the Company was addressed during testimony at the final hearing. There is no evidence that the trial court misunderstood the Houlihan valuation or that the court was confused or that it overlooked or failed to consider Husband's debt to the Company. The first issue on appeal is not what the court said or meant at a status conference but whether the court erred when it did not include Husband's debt to the Company as a current liability in the marital balance sheet.

## The Houlihan Footnote

[11]     Husband asserts that the trial court erred when it did not include the shareholder debt as a liability of the marital estate. Husband's argument emphasizes a footnote contained in the Houlihan valuation. Appellant's Br. at 7, 9. The footnote states that, since Husband's $659,707 receivable due from shareholder was included as an asset of the business, "a liability of $659,707 to the [Company] should be included in the marital balance sheet." Appellant's App. Vol. 2 at 39 n.10. As Husband frames the issue, the court simply erred when it did not comply with the Houlihan footnote and include Husband's debt as a marital liability. Husband describes the debt as an "undisputed marital liability" that "needed to be included." Appellant's Br. at 7. Husband assumes that the footnote is dispositive.

[12]     The comment in the footnote reflects routine accounting practice, but the footnote does not end the trial court's responsibility in the first instance or our inquiry on appeal as it relates to the division of marital property. A division of marital property often requires consideration of factors beyond the four corners of the marital balance sheet. There may be, as here, facts not apparent on the face of the balance sheet that should be taken into account and weighed. A division of property does not require the mechanical, robotic application of accounting principles. The touchstone and ultimate consideration is whether the division is just and reasonable. It is, therefore, entirely appropriate for a trial court to look beneath the surface of bookkeeping entries and to consider the underlying facts.

[13] The parties retained Houlihan to appraise the fair market value of the Company, not to divide the marital estate. The Houlihan footnote was extraneous to the appraisal, a sidebar, and inconclusive insofar as the division of marital property is concerned. Indeed, in its "Assumptions and Limiting Conditions," the Houlihan valuation contains an appropriate disclaimer that "[n]othing in this report constitutes legal or tax advice. We express no opinion as to legal matters." Appellant's App. Vol. 2 at 38.

[14] The Houlihan appraisal also contains other disclaimers that limit its operation and effect. Under its "Assumptions and Limiting Conditions," the appraisal also states that, "We have relied on historical and financial information provided to us by the Company, its owner(s), management and third parties." *Id.* at 57. And the appraisal further states that, "We assume there are no hidden or unusual conditions regarding the Company's assets or business interests." *Id.* at 58. These are boilerplate provisions, but they demonstrate that the Houlihan "summary appraisal report" was limited in its scope and predicated on information provided by others that Houlihan accepted at face value. It was, however, the court's responsibility not to take any evidence at face value and to consider all conditions regarding the Company's assets and business interests. It was the court's responsibility, not Houlihan's, to consider and weigh all the evidence, including the testimony of the parties, the conduct of the parties, any unusual conditions regarding the Company's assets or business interests, and to divide the property of the parties in a just and reasonable manner within the court's equitable discretion. Ind. Code § 31-15-7-4 (2019);

*see, e.g.*, *Fobar v. Vonderahe*, 771 N.E.2d 57, 60 (Ind. 2002). The Houlihan footnote is not dispositive.

<u>Husband's Valuation</u>

[15]    In its decree, the trial court found that Husband "took exception to the value placed upon his business," Appellant's App. Vol. 2 at 22, and he rejected the Houlihan appraisal. As the owner, Husband is entitled to his own opinion of the Company's value. Husband prepared and introduced Exhibit D, consisting of a spreadsheet and a narrative explanation of his valuation. *Id.* at 65-67. On Husband's spreadsheet, the line entitled "Debt owed to [the Company]" is blank. *Id.* at 65. And while Husband's narrative refers to the shareholder debt as his debt to the Company, Husband expressly "excludes" the debt as a Company asset and states that the shareholder debt "must be deducted" from the value of the Company. *Id.* at 66. According to Husband, the Company would then have a $570,000 negative net worth, approximately $1.5 million less than the Houlihan valuation. *Id.*

[16]    Husband concedes that his accounting is "unorthodox." Appellant's Br. at 9. Indeed, his methodology is internally inconsistent if not incomprehensible. He confuses assets and liabilities, and he conflates himself with the Company. Husband's valuation leaves at least two obvious questions unanswered: to whom is Husband's debt owed if not to the Company, and why would that debt not be recorded as a Company asset? Husband's valuation of the Company is based strictly upon his view that the business is worth "assets minus debts."

Appellant's App. Vol. 2 at 92. The trial court rejected Husband's explanation and opinion of the Company's value. Still, Husband's valuation is significant evidence because his valuation would eliminate the shareholder debt as a Company asset, which supports an inference that Husband does not intend to pay it.

The "Shareholder Debt"

[17] Now, on appeal, Husband contends that the trial court overstated the value of the marital estate when it included the $659,707 receivable "due from shareholder" as an asset of the Company when it adopted the Houlihan valuation but did not include the shareholder debt as a marital liability in its recapitulation of the marital estate. Appellant's Br. at 10. At the final hearing, Husband testified that the $659,707 he owed to the Company was a bookkeeping entry made for tax accounting purposes. Specifically, Husband testified that the $659,707 item shown on the Company's balance sheet as "due from shareholder" was entered "for tax purposes" to avoid having "to pay income tax on that at that time," and the shareholder debt was "to be paid whenever." Tr. at 147. In other words, the bookkeeping entry was characterized as a loan to Husband because otherwise the receivable "due from shareholder" would have been taxed as a distribution of income.

[18] Again, the Company is an S corporation in which Husband is the sole shareholder. "For income tax purposes, an S corporation owned by a single shareholder is a disregarded entity." *City of Kokomo v. Estate of Newton*, 136

N.E.3d 1172, 1176 n.4 (Ind. Ct. App. 2019), *trans. denied*. That is, for tax accounting purposes, Husband and the Company are one and the same, which means that Husband owes the receivable "due from shareholder" to himself.

[19] The Houlihan appraiser testified at the final hearing that she "relied on th[e] balance sheet" and "did not look at supporting documentation." Tr. at 34. While the valuation alludes to a "note," there is no evidence of a note in the record. While the absence of an actual note may not be decisive, there is also no evidence of interest payable on the shareholder debt, no repayment schedule, no due date, and no demand feature.

[20] Husband's argument relies upon the Company's adjusted book value balance sheet as of October 31, 2017, which shows the "due from shareholder" as a current asset. Appellant's Br. at 9. A current asset on the balance sheet is an asset with a final maturity of less than one year. *Asset*, Black's Law Dictionary (11th ed. 2019). But the evidence is clear that the "due from shareholder" item is not, in fact, a current asset and, as such, is mischaracterized on the Company's balance sheet. Husband does not suggest that he has any obligation or intention to pay this debt within one year or anytime in the foreseeable future. Rather, the "due from shareholder" item is unenforceable and open ended. Thus, while the "due from shareholder" might have been recorded as an "other asset," it should not appear as a current asset on the Company's balance sheet and, as explained below, neither should it be deemed a current liability on the marital balance sheet. While at the final hearing Husband disagreed with the Houlihan appraisal, on appeal Husband does not contest the

appraisal and accepts the characterization of the "due from shareholder" as a current asset on the Company's balance sheet.

[21] The trial court may consider the facts underlying a bookkeeping entry made for tax purposes. As we have noted, the receivable "due from shareholder" is an obligation that Husband owes to his wholly owned Company and, hence, to himself. This circumstance might explain Husband's valuation of the Company as shown in Exhibit D. But Husband cannot be both a debtor and a creditor with respect to the same debt. A debt is an enforceable legal obligation. Here, Husband cannot require himself to pay the shareholder debt to his Company. Whether he repays the debt is in his discretion. Indeed, Husband testified that the shareholder debt is to be repaid "whenever," which implies that when, if ever, the debt is paid is inconsequential and that it may never be repaid. These facts suggest and support an inference that, as a practical matter, the "sale" of the business real estate was a convenient and self-serving transaction which was booked as a shareholder loan for tax purposes, conveyed property from one closely held, related company to another, and did not create a collectable current asset or a corresponding current liability. The trial court resolved this conundrum, in part, by awarding the business real estate to husband, which largely offsets the receivable "due from shareholder" on the Company's balance sheet.

[22] Likewise, Husband has no apparent obligation to repay the Company for his personal expenses. Indeed, at the evidentiary hearing Husband did not even pretend to have an arm's-length relationship with the Company. Instead, he

acknowledged that he "mingled" his personal and business finances, although the Company's internal accountant kept track of his personal expenses. Husband continues to benefit from both the $180,000 in personal expenses the Company paid and from the rent the Company pays his other company, Bringle Properties, LLC.

[23] In sum, Husband created most of the shareholder debt merely by transferring the business real estate from one closely held, related company to another. As the alter ego of his Company, Husband has no enforceable legal obligation to pay the debt to himself. Here the "debt" consists of a bookkeeping entry and is not otherwise documented. There is no evidence that this debt is, in fact, collectable. We note that the statute of limitations on a contract not in writing is six years, Ind. Code § 34-11-2-7 (2019), and the statute begins to run from the date the underlying obligation is due. *See Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1160 (Ind. Ct. App. 2010). So even if the purported debt were collectable, the statute of limitations will have run after six years, and the debt will become uncollectable by October 2023.

[24] Having weighed the evidence, including Husband's testimony, the trial court discounted the significance of a bookkeeping entry which, Husband testified, was merely an accounting device to avoid the payment of income taxes. Further, because Husband is both the debtor and the creditor, the liability is inherently unenforceable. Given that Husband owes the debt to the Company which he owns, the authority he cites in support of his argument on appeal is readily distinguishable. In *Birkhimer v. Birkhimer*, the marital debt at issue was a

legitimate debt owed to the wife's father. 981 N.E.2d 111, 121 (Ind. Ct. App. 2012). And in *Crider*, the debt at issue was an IRS tax liability of the marriage. 26 N.E.3d at 1049-50. Again, here, Husband's "debt" is not owed to another person or entity but to himself and may never be repaid.

## The "Shareholder Debt" is a Contingent Liability

As we have already discussed, Husband contends that the trial court erred when it "failed to include [Husband's] personal debt" and, thus, "fail[ed] to divide all marital property." Appellant's Br. at 7. But that conclusion is not as self-evident as Husband would have it. While on appeal Husband does not challenge the shareholder debt as an asset in the Company's balance sheet, whether there is sufficient evidence to require a corresponding *current* liability in the marital balance sheet presents an entirely separate question.

The shareholder debt is a contingent liability. There is little relevant Indiana case law regarding the disposition of a contingent liability in divorce proceedings. *See Luttrell v. Lutttrell*, 994 N.E.2d 298, 303 (Ind. Ct. App. 2013). A "contingent liability" is a "liability that will occur only if a specific event happens"; it is a "liability that depends on the occurrence of a future and uncertain event." *Contingent Liability*, Black's Law Dictionary (11th ed. 2019). Payment of the shareholder debt is contingent upon whether or not Husband elects to pay it. The trial court heard Husband's testimony, which disclosed a casual attitude toward the shareholder debt and which, according to Husband, could be paid "whenever."

Husband simply assumes that the shareholder debt is a current liability under the general rule that assets and liabilities should be matched, but on this record the trial court, in its sound judgment, was entitled to conclude otherwise. While the Houlihan appraisal did not contemplate any "unusual conditions regarding the Company's assets or business interests," Appellant's App. Vol. 2 at 58, a trial court does not have the luxury to disregard "unusual conditions." Instead, the court is required to consider and weigh all the facts and circumstances related to the assets and liabilities of the marriage.

Here the record reveals no assurance or certainty that Husband will pay the shareholder debt. As such, the debt is a potential or contingent liability that may or may not become due. Thus, the trial court is charged with evaluating the nature of the contingent liability to determine the probability or likelihood that it will become an actual liability.

The Financial Accounting Standards Board refers to a contingent liability as a "loss contingency" and has established standards of financial accounting and reporting for loss contingencies. Financial Accounting Standards Board, *Statement of Financial Accounting Standards No. 5: Accounting for Contingencies*, at 4-5 (Mar. 1975), https://www.fasb.org/jsp/FASB/Document_C/DocumentPage?cid=1218220126761&acceptedDisclaimer=true. Under generally accepted accounting principles, a loss contingency is defined as an existing condition, situation, or set of circumstances involving uncertainty as to possible loss that will ultimately be resolved when one or more future events occur or fail to occur. *Id.* at 4. Resolution of the uncertainty may confirm

either the reduction of a liability or the incurrence of a liability. *Id.* When, as here, a loss contingency exists, the likelihood that the future event will confirm the incurrence of a liability is described as either probable, reasonably probable, or remote. *Id.* A probable future event is an event that is likely to occur. *Id.* It must be probable that the future event will occur to confirm the fact that a loss contingency has accrued and a liability has been incurred. *Id.* at 6.

[30] The collectability of a receivable is a loss contingency. *Id.* at 4. In this case, in order for the receivable "due from shareholder" or shareholder debt to be recorded as a current liability on the marital balance sheet, the trial court must determine that it is probable, that is, more likely than not, that Husband will pay the debt. Whether to recognize a contingent liability on the balance sheet requires a judicial assessment of the probability that the contingent liability will become an actual liability. Absent such a finding, the shareholder debt is not a marital liability.

[31] A judicial inquiry into the collectability of a receivable is not required in every case since in most cases that is not an issue. But, here, the collectability of the receivable "due from shareholder" is questionable. And, as we explain below, under the *Hamlin* doctrine, the contingent nature of the shareholder debt is underscored and amplified by the fact that the purported debt did not arise from an arms-length transaction and that it is Husband who will determine when, if ever, the debt is paid and becomes an actual liability. And because the debt is a mere expectancy, as we also explain below, the parties did not have a vested

present interest in it, it is not part of the marital estate, and it cannot be divided. *See Lay v. Lay (In re Lay)*, 512 N.E.2d 1120, 1124 (Ind. Ct. App. 1987).

[32] We have held that, on appeal, we will not disturb a trial court's determination that tax returns are not conclusive evidence. *Kondamuri v. Kondamuri*, 852 N.E.2d 939, 953 (Ind. Ct. App. 2006). Likewise, here, the Company's balance sheet, which appears in the Houlihan appraisal and includes a receivable "due from shareholder," is not conclusive evidence that the "shareholder debt" corresponds with a current liability rather than an uncertain contingent liability. The evidence supports an inference that the receivable "due from shareholder" was not, in fact, an enforceable current liability of the marriage but was, at most, a contingent liability controlled by Husband. Thus, the record supports a conclusion that the shareholder debt does not meet the probability standard required to appear as a liability on the marital balance sheet. It was within the trial court's sound discretion to conclude that the "due from shareholder" is an uncertain contingent liability and that it would be unjust and unreasonable to include that contingent liability in the marital estate.

## The *Hamlin* Doctrine

[33] Our Supreme Court has recognized the *Hamlin* doctrine, which provides that, when a party retains control over when or whether a condition precedent will be fulfilled, he has an implied obligation to make a reasonable and good faith effort to satisfy that condition. *See Ind. State Highway Comm'n v. Curtis*, 704 N.E.2d 1015, 1019 (Ind. 1998). Here, as we have discussed, Husband is entirely

in control of the contingent liability and will determine whether the shareholder debt is anything more than a bookkeeping entry. And, as explained in more detail below, the parties have no vested present interest in the debt. Husband's decision whether to pay the debt is a condition precedent that will determine whether the debt will ever be paid.

[34] Under the *Hamlin* doctrine, Husband has an affirmative obligation to make a reasonable and good faith effort to pay the shareholder debt. Since the debt is an indefinite contingent liability, and Husband has no legal obligation to pay it, the trial court was charged with making a credibility assessment of Husband's intent and the likelihood that he will pay it. There is no evidence in the record to suggest that Husband will make any effort to pay the debt. To the contrary, both Husband's testimony and his valuation of the Company reveal an ambivalence toward when, if ever, the debt will be repaid.

[35] We have concluded that the shareholder debt is not a current liability but an unenforceable contingent liability. Husband cannot require himself to pay the debt, and he has failed to demonstrate by a preponderance of the evidence that he intends to pay the debt, much less that he will actually pay the debt. The evidence supports a judgment that whether Husband will ever pay and discharge the debt is uncertain, if not problematic. That is, the record supports a conclusion that Husband does not recognize an affirmative duty to pay the debt and, thus, the condition precedent required to create a current liability on the marital balance sheet will not be realized. As such, the court did not err

when, after weighing the evidence, it did not include the shareholder debt as a current marital liability.

### There Is No Vested Present Interest in the "Shareholder Debt"

[36] Our Supreme Court has recognized as a "baseline principle of Indiana family law" that "[o]nly property with a vested interest at the time of dissolution may be divided as a marital asset." *Vadas v. Vadas*, 762 N.E.2d 1234, 1235 (Ind. 2002) (citing *Mullins v. Matlock,* 638 N.E.2d 854, 856 (Ind. Ct. App. 1994)). A vested interest is one that is not contingent, that is unconditional, and absolute. *Interest*, Black's Law Dictionary (11th ed. 2019). Remote and speculative interests are excluded from the marital estate. *Dall v. Dall (In re Marriage of Dall),* 681 N.E.2d 718, 722 (Ind. Ct. App. 1997).

[37] Marital property includes both assets and liabilities. *Capehart v. Capehart,* 705 N.E.2d 533, 536 (Ind. Ct. App. 1999), *trans. denied.* Thus, in a dissolution proceeding, the trial court is required to divide the assets and liabilities of the parties to the proceeding in which they have a vested present interest. *In re Lay*, 512 N.E.2d at 1123-24. "Of course, the trial court may not divide assets which do not exist just as it may not divide liabilities which do not exist.*" Id.* at 1124.

[38] As we have discussed, Husband contends that the shareholder debt is an "undisputed marital liability" and, thus, that the trial court erred when it did not include the debt in the marital estate. Husband's argument is based on the faulty premise that the parties have a vested present interest in this purported liability. Husband confuses a bookkeeping entry on the Company's balance

sheet made for tax accounting purposes with the marital balance sheet as determined by the trier of fact.

[39] Accordingly, the evidence shows that the "due from shareholder" was a contingent liability in which the parties did not have a vested present interest. Payment was conditional, indefinite, and entirely contingent upon Husband's future performance. The mere possibility that Husband would pay the "debt" at some time in the future, in his discretion, at his convenience, rendered the "due from shareholder" entry remote and speculative with respect to the division of property. *Dall*, 681 N.E.2d at 722. As such, the trial court acted well within its discretion when it determined, in effect, that the "due from shareholder" was an uncertain obligation rather than a current liability to be included on the marital balance sheet and divided.

[40] Husband also contends that the trial court "overstated" the value of the marital estate, but that argument is derivative of his contention that the court erred when it did not include the shareholder debt as a marital liability. As explained above, the court did not err. The court may well have discerned that, while Husband was engaged in a lawful tax accounting strategy to avoid paying income taxes, as a matter of equity the court was not required to debit the marital estate for a contingent liability because the court was unable to conclude that Husband was more likely than not to pay it.

[41] In addition, as previously noted, the receivable due from shareholder is not a current asset but a non-operational, non-earning asset, which adds nothing to

the Company's income. At the same time, the Company pays Bringle Properties, LLC $4,500 in rent per month for its use of the business real estate the Company "sold" to Husband and his other company. Thus, Husband and his son enjoy the benefit of rental income from the business real estate without having paid the Company for it, and Husband has not shown that he has any intention or incentive to pay for the business real estate.

[42]     Given that Husband controls both sides of the transaction, the evidence supports a conclusion that the shareholder debt arising from the "sale" of a corporate asset was a questionable, contingent liability between Husband and his closely held, related companies which did not satisfy the vested present interest requirement, and, thus, the trial court declined to honor form over substance. The court credited Husband's testimony that this transaction required a bookkeeping entry on the Company's balance sheet to avoid the payment of income taxes. The court also credited Husband's testimony, which implied that payment of the debt was indefinite and provisional and that the debt would be paid "whenever" and which includes an inference that the debt may or may not be paid at Husband's convenience.

[43]     The record also indicates that in 2017 Husband gave his son a 75% interest in Bringle Properties, LLC, which included the business real estate, and in so doing Husband attempted to make a unilateral gift of a marital asset to his son. Wife then moved to join Husband's son as a necessary party under Trial Rule 19, alleging that Husband's gift to his son was the gift of a marital asset made without her knowledge or consent. A dispute over Husband's son's interest in

Bringle Properties, LLC was avoided when the parties stipulated that all of Bringle Properties, LLC, would be considered a marital asset.

[44] The conduct of the parties during the marriage as related to the disposition of property is a statutory factor the trial court may consider. *See* Ind. Code § 31-15-7-5(4). The trial court acted within its discretion when it did not attribute the shareholder debt arising from Husband's purported "sale" of the business real estate to Bringle Properties, LLC to the marital estate. Instead, the court awarded both the Company and the business real estate to Husband. Insofar as the parties' stipulation and the decree are concerned, Husband still owns both companies and, thus, owns both the asset and the contingent liability, just as he did before the "sale."

### Husband Did Not Satisfy His Burden of Proof

[45] The party challenging the trial court's property division must overcome a strong presumption that the court considered and complied with the applicable statute. *Coyle v. Coyle (In re Marriage of Coyle)*, 671 N.E.2d 938, 942 (Ind. Ct. App. 1996). That presumption is one of the strongest presumptions applicable to our consideration on appeal. *Id.* A reviewing court will not weigh evidence but will consider the evidence in a light most favorable to the judgment. *Quillen*, 771 N.E.2d at 102. We will reverse a division of marital property only where the decision is clearly against the logic and effect of the fact and circumstances before the court. *Id.* The balancing of the statutory factors and the evidence related to them, including the disposition of marital assets during the marriage,

is the essence of the trial court's work in crafting a just and reasonable property division. *See Cowden v. Cowden,* 661 N.E.2d 894, 896 (Ind. Ct. App. 1996).

[46] In reviewing a trial court's disposition of the marital assets, we focus on what the court did, not what it could have done. *Akers v. Akers*, 729 N.E.2d 1029, 1032 (Ind. Ct. App. 2000). We may not reweigh the evidence or assess the credibility of witnesses, and we will consider only the evidence most favorable to the trial court's disposition of the marital property. *Id.* Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id.* As we have already noted, since the trial court did not make a special finding on this issue, the general judgment standard applies, and we will affirm the judgment if it can be sustained on any legal theory supported by the evidence. *Crider*, 26 N.E.3d at 1047. We conclude that the evidence, including Husband's own testimony, supports the trial court's discernment and judgment on this issue.

[47] It was Husband's burden to establish that the receivable "due from shareholder" was a present, unconditional, and absolute liability of the marriage. As such, Husband appeals from a negative judgment. To prevail on appeal, Husband must demonstrate that the trial court erred as a matter of law when it concluded, in effect, that personal expenses paid by the Company and Husband's "sale" of the business real estate from one closely held, related entity to another, while characterized as shareholder debt for tax purposes, did not create a current marital liability that should be attributed to the marital estate. There is more than sufficient evidence that the shareholder debt is a

contingent liability in which the parties do not have a vested present interest and, hence, that the purported debt is not a current liability of the marital estate. We will not substitute our judgment for that of the trial court. *Akers*, 729 N.E.2d at 1032.

[48] The ultimate question presented is whether it would be just and reasonable to include Husband's purported shareholder debt in the marital estate. The trial court's decision not to include the shareholder debt as a current liability of the marriage is supported by the record, well within the court's discretion, and not clearly erroneous. We therefore affirm on this issue.

### *Issue Two: Unequal Division of the Marital Estate*

[49] On cross-appeal, Wife first asserts that the trial court erred when it divided the marital estate unequally. As our Supreme Court has stated:

> Indiana law requires that marital property be divided in a "just and reasonable manner," [I.C. § 31-15-7-4,] and provides for the statutory presumption that "an equal division of the marital property between the parties is just and reasonable." I.C. § 31-15-7-5. This presumption may be rebutted, however, by evidence of each spouse's contribution to the acquisition of the property, the extent to which the property was acquired before the marriage or by inheritance, the economic circumstances of each spouse, the conduct of the parties relating to the disposition or dissipation of assets, and each spouse's earning ability. *Id.*

*Fobar v. Vonderahe*, 771 N.E.2d 57, 58-59 (Ind. 2002). According to Wife, various evidence presented to the trial court would have better supported an unequal division of the marital estate in her favor rather than Husband's.

[50] Wife's argument on appeal on this issue is merely a request for this Court to reweigh the evidence, which we will not do. The trial court's findings are supported by the record most favorable to the court's judgment. In particular, the trial court found, and the record shows, that Husband brought substantial assets into the marriage, including the business and valuable real property. The trial court further relied on Wife's earning ability at the time of the decree of dissolution, which is substantial. During her testimony before the court, she acknowledged that she is an active realtor and that she had sold more than $4,000,000 in real property during the course of the dissolution proceedings. And the court also considered that the parties' economic circumstances, especially that the reconciliation payment Husband would have to make to Wife would "affect his overall financial well-being for a significant amount of time." Appellant's App. Vol. 2 at 23. Moreover, as the trial court found, this was a subsequent marriage for both parties, and Husband and Wife were married for only eight and one-half years. The trial court's unequal distribution of the marital estate is therefore supported by the record, and we affirm the court's judgment.

### Issue Three: Wife's Attorney's Fees

[51] Wife also argues on cross-appeal that the trial court erred when it did not order Husband to pay her attorney's fees. In particular, Wife asserts that Husband's behavior during the dissolution proceedings justified an award of fees to her. Although there is statutory authority for an award of attorney's fees in dissolution actions, parties are first presumed to pay their own attorney's fees

and such an award lies within the sound discretion of the trial court. Wife has not shown that the trial court abused its discretion or otherwise erred in ordering Husband and Wife to pay their own attorneys' fees. We affirm the court's judgment.

## Conclusion

In sum, we affirm the trial court's decree of dissolution in all respects.

Affirmed.

Kirsch, J., and Brown, J., concur.